**Willie BROWN, Jr., Petitioner–Appellant,**

v.

**R.C. LEE, Warden, Central Prison, Raleigh, North Carolina, Respondent–Appellee.**

No. 02–11.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 2002.

Decided Feb. 14, 2003.

---

**ARGUED:** James Donald Cowan, Jr., Smith Moore, L.L.P., Greensboro, North Carolina, for Appellant. Ellen Bradshaw Scouten, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frances P. Turner, Smith Moore, L.L.P., Greensboro, North Carolina, for Appellant. Roy Cooper, Attorney General of North Carolina, North Carolina Department of Justice, Raleigh, North Carolina, for Appellee.

Before LUTTIG, MICHAEL, and TRAXLER, Circuit Judges.

Dismissed in part, reversed in part, and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Luttig and Judge Michael joined.

## OPINION

TRAXLER, Circuit Judge.

Petitioner Willie Brown, Jr., filed a petition for habeas relief in the district court under 28 U.S.C.A. § 2254 (West 1994 & Supp.2002), challenging a sentence of death imposed after his conviction in North Carolina for the armed robbery and murder of Vallerie Ann Roberson Dixon. Brown asserts that his death sentence is constitutionally infirm because the state trial court instructed the jury that unanimity was required to find mitigating circumstances, a practice struck down by the United States Supreme Court in *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). Brown also contends that his trial counsel was constitutionally ineffective for failing to investigate and present additional mitigating evidence during the sentencing phase of his trial.

The district court dismissed Brown's habeas petition, but granted Brown's application for a certificate of appealability on the unanimity issue. *See* 28 U.S.C.A. § 2253 (West Supp.2002). Brown now seeks a certificate of appealability from this court granting him permission to appeal the district court's dismissal of his ineffective assistance of counsel claim as well.

For the following reasons, we reverse the district court's holding that Brown's unanimity claim is procedurally barred and remand to the district court for consideration of the merits of that claim. We deny, however, Brown's application for a certificate of appealability on the ineffective assistance of counsel claim.

## I.

In November 1983, a North Carolina jury convicted Brown of the armed robbery and murder of Vallerie Ann Roberson Dixon. The facts leading to Brown's con-

viction are fully set forth by the North Carolina Supreme Court in *State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985). Given the more narrow issues before us, a brief summary will suffice here.

At approximately 5:47 a.m. on the morning of March 6, 1983, a Zip Mart convenience store on Main Street in Williamston, North Carolina, where Ms. Dixon was supposed to be working as a clerk, was reported empty. A patrolling police officer had seen Ms. Dixon in the store less than thirty minutes prior to the report. Money from the cash register and a store safe was missing, as was Ms. Dixon's automobile. A search for Ms. Dixon was immediately begun.

At about 6:20 a.m., a police officer spotted Ms. Dixon's automobile traveling on a nearby road. The automobile was stopped by police officers, and Brown, who was driving alone in the vehicle, was immediately placed under arrest and advised of his rights. A .32 caliber six-shot revolver, a paper bag containing approximately $90 in cash and change, and a change purse containing Ms. Dixon's drivers license and social security card were found in the automobile. A pair of ski gloves and a toboggan cap with eye holes cut out of it were found on Brown's person. The exterior of the car was partly covered with fresh mud. According to the police officers, Brown admitted that he robbed the Zip Mart and fled in Ms. Dixon's car, but claimed that Ms. Dixon was unharmed when he left the store.

At approximately 4:00 p.m. that afternoon, Ms. Dixon's body was found on a muddy logging road in a rural area outside Williamston. Forensic pathology and firearm tests revealed that Ms. Dixon had been shot six times with the .32 caliber revolver that police had found in Dixon's car at the time of Brown's arrest.

Brown testified at his trial and disputed the police officers' version of the events that day. Brown testified that, while he was jogging near the Zip Mart, a man ran past him and away from a parked car with an opened door. Brown testified that he saw a gun and bag of money on the seat of the car, sat down in the vehicle, and was arrested by police before he could get out of the vehicle. Brown denied robbing or killing Ms. Dixon, and denied making any admissions to the police. On cross-examination, Brown admitted that he had been previously convicted in North Carolina of breaking and entering and in Virginia for five armed robberies and the assault of a police officer. He denied, however, that he was guilty of committing those crimes.

Following the presentation of all the evidence, the jury convicted Brown of first-degree murder and robbery with a dangerous weapon. A capital sentencing proceeding was then held, *see* N.C. Gen.Stat. § 15A–2000 (2001), during which additional details of Brown's prior convictions in North Carolina and Virginia were presented to the jury. Brown had been convicted in 1963 in North Carolina of six counts of felonious larceny and six counts of breaking or entering. In 1965, Brown was convicted in Virginia of five counts of armed robbery and one count of felonious assault. The victim of the assault was a Virginia police officer, who testified at the sentencing hearing that he was shot and paralyzed when Brown shot him three times in an attempt to avoid arrest.

In mitigation, Brown presented the testimony of law enforcement officers who testified that he offered no resistance to his arrest for murder, that he was not disrespectful during interrogation, and that he had an intense emotional reaction, crying and shaking, when questioned about Ms. Dixon. Brown also presented testimony from his mother, who testified that

Brown was the second of seven children, that he was born and raised in Williamston, that he was not a good student, that his father died in 1973, that she had visited him regularly in prison, and that he had treated her with respect when he returned to live at home after his release from prison. Brown's school records documenting his poor scholastic record were also presented.

At the conclusion of the sentencing phase of the trial, three potential aggravating circumstances were submitted for consideration by the jury: (1) that Brown had previously been convicted of a felony involving the use of threat or violence to the person; (2) that the murder was committed by Brown while he was engaged in the commission of or flight after committing a robbery; and (3) that the murder was especially heinous, atrocious or cruel. The jury found all three aggravating circumstances to be present.

The trial court submitted seven possible mitigating circumstances for the jury's consideration: (1) that Brown had no significant history of prior criminal activity; (2) that Brown was a person of limited intelligence and education; (3) that Brown was under the age of 21 at the time he committed any previous felonies for which he had been convicted; (4) that Brown had not been convicted of any criminal offense for 18 years; (5) that Brown surrendered at the time of his arrest without resistance to law enforcement officers; (6) that Brown confessed soon after his arrest to robbing the Zip Mart; and (7) any other circumstances which the jury deemed to have mitigating value.

The jury found no mitigating circumstances and returned a recommendation that Brown be sentenced to death for the murder conviction. Following the recom-

mendation, the trial court imposed the sentence. The North Carolina Supreme Court affirmed Brown's conviction and death sentence, see Brown, 337 S.E.2d at 830, and the United States Supreme Court denied Brown's petition for writ of certiorari. See Brown v. North Carolina, 476 U.S. 1164, 106 S.Ct. 2293, 90 L.Ed.2d 733 (1986).

## II.

On March 9, 1987, Brown filed a motion for appropriate relief ("MAR"), see N.C. Gen.Stat. § 15A–1415 (2001), in Martin County Superior Court, asserting for the first time that the trial court had erroneously instructed the jury that it must unanimously find any mitigating circumstances, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Brown also alleged that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to adequately investigate and present mitigating evidence.

On November 19, 1987, Superior Court Judge Charles B. Winberry concluded that Brown was procedurally barred from raising all issues set forth in his MAR, including the unanimity issue, except for those alleging ineffective assistance of counsel. On March 28, 1994, Brown re-raised the unanimity issue in an amended MAR, and sought reconsideration of the November 1987 order shortly thereafter, citing the intervening Supreme Court decision in McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).[1] On January 18, 1996, however, the state MAR court concluded that the November 1987 order, procedurally barring the unanimity claim, constituted a final judgment

---

1. Because the state MAR court had not yet resolved issues pertaining to the alleged ineffective assistance of counsel, the 1987 MAR was still pending in 1994.

and was the law of the case. In 1997, after having conducted an evidentiary hearing on Brown's claims of ineffective assistance of counsel, the state MAR court entered an order denying Brown's motion for appropriate relief and his amendments to that original motion. Brown apparently raised the unanimity claim yet again in a Second MAR filed in August 1997, which in November 1997 was likewise rejected as procedurally barred. Brown's attempts to seek review of the state court MAR orders by the North Carolina Supreme Court and the United States Supreme Court were ultimately unsuccessful, and Brown turned to the federal habeas court for relief.

Brown's § 2254 petition raised eleven constitutional challenges to his conviction and sentence, including the unanimity issue and ineffective assistance of counsel claim. Following an evidentiary hearing, the district court granted the state's motion for summary judgment, denied Brown's motion for summary judgment, and dismissed the petition. Brown's subsequent motion to alter or amend the judgment was also denied. The district court refused to review the merits of Brown's unanimity claim because the state court had procedurally barred him from raising it, and rejected Brown's ineffective assistance of counsel claim on the merits.

In May 2002, Brown filed an application for a certificate of appealability with the district court, seeking an appeal of the district court's conclusion that it was procedurally barred from considering the unanimity claim and the district court's denial of Brown's ineffective assistance claim. *See* 28 U.S.C.A. § 2253. The district court found that Brown had made an adequate showing that reasonable jurists could debate the application of procedural default to his unanimity claim and granted Brown's application for a certificate of appealability as to this claim. However, the court denied a certificate of appealability as to Brown's ineffective assistance of counsel claim.

Accordingly, the issues pending before us are: (1) whether the district court erred in concluding that Brown has procedurally defaulted federal habeas review of the merits of his unanimity claim because the North Carolina state court concluded it was procedurally barred; and (2) whether Brown's application for a certificate of appealability, seeking permission from this court to appeal his ineffective assistance of counsel claim, should be granted.

### III.

We begin with Brown's appeal of the district court's conclusion that he procedurally defaulted federal habeas review of the merits of his claim that his constitutional rights under the Eighth and Fourteenth Amendments were violated because the trial court instructed the jury during his sentencing phase that it must unanimously find the existence of any mitigating circumstances. The district court held that it was procedurally barred from considering the merits of this unanimity claim because Brown had failed to raise the issue on direct appeal to the North Carolina Supreme Court and the North Carolina MAR court procedurally barred review of the claim on this basis.

### A.

In 1990, the United States Supreme Court held that North Carolina's requirement that a jury unanimously find the existence of a mitigating circumstance before weighing it against aggravating circumstances impermissibly prevented each juror from considering all of the mitigating evidence. *See McKoy,* 494 U.S. at 435, 110 S.Ct. 1227. However, just six months prior to Brown's November 1983 conviction, the North Carolina Supreme Court had

found no error in a trial court's instructions concerning a requirement of unanimity for mitigating circumstances. *See State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144, 156–57 (1983). Five years after *Kirkley* was decided and Brown was convicted, however, the United States Supreme Court reversed a death sentence imposed in Maryland because there was "a substantial probability that reasonable jurors ... well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Mills v. Maryland*, 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The North Carolina Supreme Court attempted to distinguish the Maryland instruction at issue in *Mills* from North Carolina's unanimity requirement, *see State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988), but the United States Supreme Court ultimately held that North Carolina's requirement likewise failed to pass constitutional muster, *see McKoy*, 494 U.S. at 443–44, 110 S.Ct. 1227. The Constitution, the Court held, requires that "each juror must be allowed to consider all mitigating evidence in deciding ... whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to justify a sentence of death." *Id.* at 443, 110 S.Ct. 1227; *see also Williams v. French*, 146 F.3d 203, 215–216 (4th Cir.1998).

Shortly after the United States Supreme Court issued its decision in *McKoy*, the North Carolina Supreme Court ruled that it would not apply the plain error standard to direct appeals of capital defendants who had failed to object at trial to a *McKoy* error, at least for all trials conducted after *Kirkley* but before *Mills*. *See State v. Sanderson*, 327 N.C. 397, 394 S.E.2d 803, 806 (1990). Such errors would, however,

be subjected to a harmless error analysis. *See id.* at 806; *see also State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106, 110 (1990).

In March 1992, a panel of this court held that the unanimity holdings in *Mills* and *McKoy* were exceptions to the general rule that "new rules" do not apply retroactively to cases on collateral review. *See Williams v. Dixon*, 961 F.2d 448, 453 (4th Cir.1992) (citing *Teague v. Lane*, 489 U.S. 288, 305, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). Two years later, in June 1994, the North Carolina Supreme Court adopted the retroactivity standard announced in *Teague*, and likewise held that *McKoy* would be applied retroactively "to final cases on state post-conviction review," at least where the defendant assigned the instruction as error on direct review. *State v. Zuniga*, 336 N.C. 508, 444 S.E.2d 443, 446–47 (1994).

Brown initially challenged the trial court's unanimity instruction in his First MAR, filed in March 1987. In November 1987, the state MAR court ruled that Brown was procedurally barred from raising the claim because he was in a position to adequately raise the issue before the North Carolina Supreme Court on direct appeal and had failed to do so. *See* N.C. Gen.Stat. § 15A–1419(a)(3) (2001) (providing that an MAR may be denied when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so"). This ruling, of course, post-dated the North Carolina Supreme Court's *Kirkley* decision upholding the unanimity instruction, but predated the United States Supreme Court decisions in *Mills* and *McKoy*, as well as the decisions in *Williams* and *Zuniga* regarding retroactivity. However, as set forth above, Brown's attempts to re-raise the unanimity issue in the wake of *Mills* and *McKoy*, and to obtain reconsideration of

the MAR court's November 1987 order, were unsuccessful because the MAR court concluded that the November 1987 order constituted a final judgment and was the law of the case.

### B.

■ Under the doctrine of procedural default, a federal habeas court is precluded from reviewing the merits of a constitutional claim that the state refused to consider on the merits "pursuant to an independent and adequate state procedural rule, ... unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

■ The assessment of whether a particular state procedure is "independent and adequate," so as to bar consideration of the merits of a federal constitutional claim, is a question of federal, not state, law. *See Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); *see also Edwards v. Carpenter,* 529 U.S. 446, 455, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (Breyer, J., concurring). A state rule is "adequate" if it is firmly established and regularly or consistently applied by the state court, *see Johnson,* 486 U.S. at 587, 108 S.Ct. 1981, and "independent" if it does not "depend[ ] on a federal constitutional ruling," *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). *See also Yeatts v. Angelone,* 166 F.3d 255, 260 (4th Cir.1999).

The basis for the district court's determination that Brown procedurally defaulted federal habeas review of his unanimity claim is N.C. Gen.Stat. § 15A–1419(a),

which sets forth the following procedural bars to the state court's review of issues raised in a motion for appropriate relief:

(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.... :

(2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.

(3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so....

(4) The defendant failed to file a timely motion for appropriate relief as required by G.S. 15A–1415(a).

N.C. Gen.Stat. § 15A–1419(a).

Section 15A–1419 was amended in June 1996. Prior to that time, N.C. Gen.Stat. § 15A–1419(b) provided that "[a]lthough the court may deny the motion under any of the circumstances specified in [subsection (a)], in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious." N.C. Gen.Stat. § 15A–1419(b)' (1995). The amended version of section 15A–1419(b) now provides that:

(b) The court *shall* deny the motion under any of the circumstances specified in [subsection (a)], unless the defendant can demonstrate:

(1) Good cause for excusing the grounds for denial listed in subsection (a) of this section and can demonstrate actual prejudice resulting from the defendant's claim; or

(2) That failure to consider the defendant's claim will result in a fundamental miscarriage of justice.

N.C. Gen.Stat. § 15A–1419(b) (emphasis added). Therefore, the amendment to section 15A–1419(b) made the state procedural bars established under section 15A–1419(a) mandatory, rather than discretionary, unless the petitioner can demonstrate good cause or a fundamental miscarriage of justice. *See Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001).

Brown asserts that the state MAR court did not review and reject his *McKoy* claim based upon an "independent and adequate" state law ground because, although the procedural bars available under subsections 15A–1419(a)(1) and (a)(3) have generally been found to be adequate to preclude federal habeas review of other types of defaulted constitutional claims, the state procedural bars have not been "regularly and consistently" followed by North Carolina courts which have been presented with alleged "unanimity" claims.[2]

■■■■ As correctly noted by the parties, we have on a number of occasions held that subsections 15A–1419(a)(1) and (a)(3) are independent and adequate state law grounds for finding that a claim has been procedurally defaulted. *See e.g., Fisher v. Lee*, 215 F.3d 438, 456 (4th Cir.2000); *Boyd v. French*, 147 F.3d 319, 332 (4th Cir.1998); *Williams*, 146 F.3d at 217; *Ashe v. Styles*, 39 F.3d 80, 87–88 (4th Cir.1994). However, as the parties also correctly note, this general observation does not end our inquiry. *See e.g., Bacon v. Lee*, 225 F.3d 470, 476–77 (4th Cir.2000),

*cert. denied* 532 U.S. 950, 121 S.Ct. 1420, 149 L.Ed.2d 360 (2001); *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir.2000). Where the procedural bars available in subsections 15A–1419(a)(1) and (a)(3) have *not* been regularly and consistently applied by the state court to a particular type of federal constitutional claim, they cannot be considered an adequate state law ground barring federal court review of the merits of that claim. *See McCarver*, 221 F.3d at 589; *see also Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."). Otherwise, state courts would be able to engage in an arbitrary application of state procedural rules to thwart federal habeas review of constitutional issues that the "adequacy" requirement was designed to prevent.

Thus, as we have previously held, "[t]he question we must ask . . . is whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous—here, cases in which *the particular claim* raised could have been raised previously but was not." *McCarver*, 221 F.3d at 589 (second emphasis added). "[C]onsistent or regular application of a state rule of procedural default does not require that the state court show an undeviating adherence to such rule admitting of no exception so long as the rule has as a general rule been applied in the vast majority of cases." *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir.1999) (internal quotation marks and ellipsis omitted); *see also Yeatts*, 166 F.3d at 263–64.

---

**2.** Although North Carolina courts refer to the subsection 15A–1419(a)(2) bar as a "procedural bar" for purposes of reviewing a state court defendant's MAR, it is not a state procedural bar for purposes of federal habeas review. Subsection (a)(2) bars state MAR review of a claim that has been properly raised by a state court defendant, but rejected on the merits. Thus, it states a rule of res judicata and law of the case, precluding re-litigation of the claim though the MAR proceeding.

## C.

In this case, our precise inquiry is to determine whether the procedural bars in subsection 15A–1419(a)(1) or (a)(3) have been applied consistently to cases in which a unanimity claim could have been raised on direct appeal but was not. To support their respective positions on this issue, the parties have directed our attention to ten capital defendants in North Carolina who first raised a claim that their sentencing jury was improperly instructed that it must unanimously find the existence of any mitigating circumstances *after* the completion of their direct appeal, *i.e.,* in motions for appropriate relief brought under section 15A–1415. Of these ten capital defendants, six received an adjudication of the merits of their unanimity claim and four found their claims to be procedurally barred under section 15A–1419(a).

### 1.

We begin with those cases, relied upon by Brown, in which the state MAR courts did *not* apply the procedural bars available at the time for discretionary application under subsections 15A–1419(a)(1) and (a)(3).

### (a)

Michael Van McDougall was convicted of capital murder in 1980. He raised his unanimity claim in a Second MAR filed June 15, 1988, just days after the Supreme Court's decision in *Mills* was issued. At the time, McDougall had already filed a federal habeas petition, and this court delayed issuing our opinion pending the Supreme Court's decision in *McKoy*. On December 19, 1990, we held that *McKoy* did not apply to McDougall's instruction. *See McDougall v. Dixon,* 921 F.2d 518, 539 (4th Cir.1990). We also stated, in dicta, that even if *McKoy* applied, it would represent new law not applicable retroactively

to cases on collateral review. *See id.* Thus, McDougall received an adjudication on the merits of his unanimity claim, albeit an unsuccessful one. Shortly thereafter, the state MAR court ruled upon McDougall's Second MAR which had also raised the unanimity claim. The state argued that McDougall's *McKoy* claim was procedurally barred by section 15A–1419, but the state MAR judge refused to so rule, noting that "[g]iven the state of the law in North Carolina regarding capital sentencing procedure during the period of McDougall's direct appeal and the decision on his first [MAR], and the impossibility of predicting future appellate decisions on federal constitutional law, this [c]ourt declines to conclude that McDougall's Mills/McKoy claim is procedurally barred." S.J.A. 60. The court then proceeded to also address, but ultimately reject, McDougall's unanimity claim on the merits.

### (b) ·

The case of Douglas Williams, who was convicted in 1981, is also apposite. By order dated June 17, 1985, the state MAR court addressed the merits of a unanimity claim first raised by Williams in his MAR, but held that the jury was properly charged in accordance with the North Carolina Supreme Court's *Kirkley* decision (which was still controlling precedent in North Carolina at the time). The claim had not been presented on direct appeal from Williams' conviction, but we find no indication in our record as to whether the state MAR court was presented with a claim that Williams had procedurally defaulted the issue by not raising it on direct appeal. In 1992, on appeal from the district court's denial of Williams' petition for writ of habeas corpus (and contrary to the dicta in *McDougall* ), we expressly held that the *Mills/McKoy* rules applied retroactively to cases on collateral review. *See*

*Williams,* 961 F.2d at 453. Accordingly, we vacated Williams' death sentence and remanded the case to the district court. *See id.* at 459.

### (c)

In 1993, the state MAR court specifically rejected the contention that Alton Garner Green, convicted in 1985 (also after the *Kirkley* decision was issued), was procedurally barred from raising a unanimity challenge by his failure to raise the issue at trial or on direct appeal from his conviction. Noting that "[a]t the time of Green's trial, and on appeal, no lawyer or judge in North Carolina had reason to believe there was error in the unanimity instruction that required correction," the court ruled that Green's failure to raise the issue did not bar him from raising it on state post-conviction review. S.J.A. 21. In addition, the court found that "in the interests of justice and for good cause shown, Green should be allowed to raise the *McKoy* issue in th[e] post-conviction proceeding." S.J.A. 21. Thus, the state MAR court again invoked its discretion under section 15A–1419(b) to address the merits of an otherwise procedurally defaulted unanimity claim.

### (d)

Two additional capital defendants, Francis Marion Anthony and Andrew Craig, also obtained state MAR review of the merits of unanimity claims that had not been raised on direct appeal. In the Craig case, an order was entered by Superior Court Judge Davis in August 1996, ruling that Craig's unanimity claim, raised in a Second MAR, was procedurally barred pursuant to section 15A–1419. However, the unanimity claim, as well as others raised in the Second MAR, was later reheard by Senior Resident Superior Court Judge Beale. Judge Beale issued an order dated July 18, 2000, denying a number of claims, but not the unanimity claim, as being procedurally barred pursuant to section 15A–1419. Instead, Judge Beale rejected the unanimity claims of both Craig and Anthony on the merits and not on the basis of a procedural bar in section 15A–1419.

### (e)

The final case cited by Brown does not speak directly to the "regularly and consistently applied" issue because we can find no indication that the state court was even presented with the unanimity claim in an MAR. It is, however, indirectly supportive of Brown's contention that he should obtain a decision on the merits. In 1991, a federal magistrate judge refused to accept North Carolina's claim that David Lawson, who was convicted in 1981, should be procedurally barred from raising his unanimity claim under section 15A–1419(a), noting that it would not be appropriate to presume that such a claim would be procedurally barred by a state MAR court in view of the discretion available to the state judges to address the merits of such claims under the pre–1996 version of section 15A–1419(b). However, the magistrate judge concluded that Lawson lost on the merits of his unanimity because *McKoy* had no retroactive application, and the district judge adopted the magistrate judge's recommendations and entered judgment dismissing Lawson's petition on January 7, 1992. Two months later, of course, we reached the contrary conclusion on retroactivity. *See Williams,* 961 F.2d at 456. In Lawson's appeal to this court, and without discussion of the default or retroactivity issues, we addressed the merits of Lawson's claim and found no *McKoy* violation. *See Lawson v. Dixon,* 3 F.3d 743, 754 (4th Cir.1993).

## 2.

In contrast to these cases, in which similar defendants received review of the merits of their unanimity claims, the state has directed us to the cases of four capital defendants whose unanimity claims *were* found to be procedurally barred under section 15A–1419(a) by a state MAR court.

## (a)

We begin with the case of Larry Darnell Williams, convicted of capital murder in 1980. Although we have not been provided with the state court order, Williams appears to have first raised his unanimity claim before a state MAR court. *See Williams*, 146 F.3d at 215. The state court denied the claim on November 17, 1995, as being procedurally barred, but it is not clear whether Williams even contested the bar at the state court level. On federal habeas, Williams "acknowledge[d] this claim [was] procedurally defaulted under [subsection] 15A–1419(a)(3) because, as the state court held, the claim could have been raised on direct appeal." *Id.* However, Williams did contend that he could show cause and prejudice to excuse the procedural default, starting with the claim that his counsel was ineffective for failing to pursue the unanimity claim on direct appeal. Concluding that the instruction given by the trial court did not run afoul of the principles in *McKoy*, we held that Williams had failed to establish cause to excuse the procedural default and denied habeas relief. *Id.* at 215–16. Thus, unlike Brown, Williams did not contend on federal habeas that subsection 15A–1419(a)(3) was an inadequate state law ground to preclude federal habeas review of the merits of his claim. The issue was not presented to us and the amended version of section 15A–1419(b), in effect by the time of our review, made denial of a ground for relief under subsection (a) mandatory by

the state court unless the defendant could show cause and prejudice or a miscarriage of justice.

## (b)

The state next relies upon the case of Kermit Smith, Jr., who was convicted of capital murder in 1981. It too has a lengthy history. *See Smith v. Dixon*, 14 F.3d 956 (4th Cir.1994) (en banc). However, it suffices for our purposes to observe that, following our split over the issue of whether the state court had in fact procedurally barred Smith's unanimity claim, the state MAR court held on January 3, 1995 that the claim, then raised in a Third MAR, was procedurally barred under subsections 15A–1419(a)(3) and (a)(2) due to Smith's failure to raise the issue on direct appeal and, alternatively, because Smith's unanimity claim had been addressed and rejected on the merits by the federal court. In our prior opinion, a majority of the court had also rejected the unanimity claim on the merits, concluding that "Smith's sentencing hearing was not tainted with *McKoy* error." *Id.* at 981 n. 15; *see id.* at 983 (Hall, J., concurring).

## (c)

The third case relied upon by the state is that of David Earl Huffstetler, convicted of capital murder in 1983. In that case, by order dated October 15, 1990, the state MAR court clearly ruled that Huffstetler's unanimity claim, raised in a Second and Third MAR, was procedurally barred under subsections 15A–1419(a)(1) and (a)(3). However, the court went on to specifically note that it need *not* address whether, "in the interest of justice and for good cause shown" it should exercise its discretion to "grant the motion if it is otherwise meritorious," *see* N.C. Gen.Stat. § 15A–1419(b) (1995), noting that "[w]hile the rule in *McKoy v. North Carolina* is a change in the law, it is not to be given retroactive

application." S.J.A. 140. Because this order predated the contrary holdings on retroactivity expressed by the North Carolina Supreme Court in *Zuniga,* and by our court in *Williams,* it is of limited utility in resolving this case.

(d)

Finally, the state relies upon the case of Phillip Robbins, also convicted of capital murder in 1983. On February 1, 1993, the state MAR court ruled, without elaboration, that Robbins' unanimity claim was barred pursuant to subsection 15A–1419(a)(3). There is no discussion of the discretion afforded under then-existing subsection (b), although the state MAR court order in Robbins also predates *Zuniga* and *Williams.* For that matter, it post-dates our decision in *McDougall* indicating that we would not apply *McKoy* retroactively.[3]

D.

To summarize, Brown has pointed us to five defendants convicted in North Car-

olina of capital murder who obtained judicial review of the merits of their constitutional unanimity claim, first raised in a motion for appropriate relief, by the state MAR court. Two were ultimately successful in obtaining relief on the merits, and three were not, but all obtained review of the merits. A sixth capital defendant obtained review of the merits on federal habeas, even though it had not been raised on direct appeal to the state court.

The state has pointed us to four cases in which the capital defendants' unanimity claims were found to be procedurally barred under subsection 15A–1419(a)(3). Two of those defendants, however, received a judicial determination that there was no constitutional error in the challenged instruction, albeit within the procedural bar context, and the remaining two cases involved unanimity claims that were procedurally barred during the time that state MAR courts were afforded discretion to review the merits of procedurally defaulted claims that might otherwise be

---

**3.** The state's reliance upon a fifth case—that of Henry Lee Hunt—is wholly inapposite. In *Hunt,* the North Carolina Supreme Court rejected on the merits a unanimity claim raised by Hunt on direct appeal. *See State v. Hunt,* 323 N.C. 407, 373 S.E.2d 400, 417 (1988). However, because that decision was based upon the reasons stated in its opinion in *State v. McKoy,* 323 N.C. 1, 372 S.E.2d 12 (1988), the *Hunt* decision was vacated and remanded by the United States Supreme Court for further reconsideration in light of the Supreme Court's overruling of that decision in *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). *See Hunt v. North Carolina,* 494 U.S. 1022, 110 S.Ct. 1464, 108 L.Ed.2d 602 (1990). On remand, the North Carolina Supreme Court found that any *McKoy* error in Hunt's trial was harmless and affirmed Hunt's death sentence, *see State v. Hunt,* 330 N.C. 501, 411 S.E.2d 806, 814 (1992), and the Supreme Court denied certiorari, *see Hunt v. North Carolina,* 505 U.S. 1226, 112 S.Ct. 3045, 120 L.Ed.2d 913 (1992).

Hunt apparently filed an MAR on December 3, 1992, re-raising the *McKoy* claim, which was found to be procedurally barred by order of the state MAR court in June 1994. The precise basis for the default ruling is not provided to us, but because Hunt raised the original challenge to the unanimity instruction given at his trial on direct appeal, we know the claim was *not* barred under subsection 15A–1419(a)(3). Rather, because the application of the procedural bar post-dates the North Carolina Supreme Court's determination that the *McKoy* violation was harmless error, we can assume that Hunt's 1992 *McKoy* claim was directed to the "harmless error" claim, which was subject to procedural bar by the MAR court under subsection 15A–1419(a)(2) (providing that a MAR claim may be procedurally barred under state MAR law if the issue was previously determined on the merits upon direct appeal or in a prior MAR). *See also Hunt v. Lee,* 291 F.3d 284, 287–88 (4th Cir.2002) (setting forth the procedural history of Hunt's state appeal and post-conviction proceedings).

meritorious, but prior to North Carolina's determination that *McKoy* would not be applied retroactively to cases on state collateral review.

As we have previously discussed, Brown's ability to obtain federal habeas review of the merits of his unanimity claim rests upon our resolution of the question of "whether the particular procedural bar [has been] applied consistently to cases that are *procedurally* analogous—here, cases in which *the particular claim* raised could have been raised previously but was not." *McCarver*, 221 F.3d at 589 (second emphasis added). Having reviewed the evidence presented by the parties on this more precise issue, we are satisfied that the state MAR courts have not regularly and consistently applied section 15A–1419(a) to unanimity claims made by defendants in procedural postures similar to Brown's. Brown has made a colorable showing that, although subsections 15A–1419(a)(1) and (a)(3) have been generally held to be adequate and independent state procedural grounds to bar federal habeas review of a claim, the state MAR courts have not consistently applied the bar to unanimity claims raised by defendants in the wake of *Mills* and *McKoy*. We suspect that this may well have been due to the fact that state MAR courts, prior to 1996, had discretion in their ability to reach the merits of otherwise procedurally defaulted claims.[4] But, in the end, it matters little why the bar has not been regularly and consistently applied by state MAR courts to unanimity claims. Because it has not been, the state MAR court decision barring review of Brown's claim on the merits was not based on an adequate

and independent state law ground. And, because we hold that there is no procedural bar to federal habeas review of the merits of Brown's unanimity claim, we must remand the case to the district court for the purpose of conducting such review in the first instance.

## IV.

Brown has also sought permission to appeal the district court's dismissal of his claim that his attorneys were constitutionally ineffective under the Sixth and Fourteenth Amendments for failing to adequately investigate and present mitigating evidence to the jury. Brown asserted below that counsel failed to uncover and present certain testimony from family and friends on his behalf, failed to collect available medical, psychological, or correctional information concerning Brown, and failed to obtain an independent evaluation of Brown's mental condition.

### A.

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and that such assistance be effective, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish an ineffective assistance of counsel claim before the state court, Brown was required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and "that there is a reasonable prob-

---

**4.** In the alternative, Brown contended that we should address the merits of his *McKoy* claim because he had established cause and prejudice for his procedural default, that our failure to do so would result in a manifest injustice, and that such review is warranted under

*Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). In view of our decision that the claim is not procedurally defaulted, we need not address these alternative grounds for review.

ability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

Brown presented his ineffective assistance of counsel claim to the state MAR court, which received and considered the testimony of six of Brown's family members, a childhood friend, and a teacher. The court also received and considered expert testimony from two mental health professionals who had examined Brown and who opined that he suffered from an impulse control disorder at the time of the murder. In June 1997, however, the court denied relief upon concluding that Brown had failed to prove that counsel's presentation of mitigation evidence during the sentencing phase was outside the range of competence demanded of attorneys in criminal cases or that the presentation of additional evidence "would have caused a different result." J.A. 2117 (internal quotation marks omitted).

On federal habeas review, the district court also conducted an evidentiary hearing to explore trial counsel's presentation of mitigating evidence on Brown's behalf. Counsel testified that Brown's family was of no assistance to him in preparation for sentencing, that he did not perceive Brown to have any mental problems, and that he did not recall any indication that Brown had ever undergone a psychiatric evaluation. The district court concluded that Brown had failed to establish that he was denied effective assistance of counsel as a result of counsel's investigation and presentation of mitigating evidence. The district court found "that counsel made a reasonable effort to meet and consult with members of petitioner's family and to investigate and present mitigating evidence," J.A. 2117–18, and that the court could not "conclude from the testimony of family and friends presented in the state court proceedings that there [was] a reasonable probability that the outcome of the sentencing proceeding would have been different had their testimony been presented," J.A. 2118. The district court likewise concluded that counsel was not deficient in failing to investigate and present mental health evidence. Having found that Brown had failed to establish that he was denied the effective assistance of counsel as a result of counsel's investigation and presentation of mitigating evidence, the district court thereupon concluded that the state court's adjudication of the claim was neither contrary to nor an unreasonable application of clearly established federal law. *See* 28 U.S.C.A. § 2254(d)(1).

### B.

■ In order to pursue an appeal from a final order in a habeas proceeding arising from a state court conviction the state court defendant must obtain a certificate of appealability. The certificate of appealability "may issue ... if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). To do so, the applicant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks omitted).

■ Having been denied a certificate of appealability of this issue from the district court, Brown now requests that we allow him to appeal the issue along with his

unanimity claim. In particular, Brown asserts that the state court applied the wrong standard of review, *i.e.*, the state MAR court required him to show that the presentation of additional evidence in mitigation "would have caused a different result," J.A. 2117 (internal quotation marks omitted), instead of just a "reasonable probability" that the outcome "would have been different," *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. As a result, Brown asserts, we must review his claim *de novo*. We disagree. Following an evidentiary hearing, the district court independently concluded that Brown had failed to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. Based upon these findings, the district court then concluded that the state court's adjudication of the claim was neither contrary to nor an unreasonable application of clearly established federal law. *See* 28 U.S.C.A. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In addition, we have independently reviewed the record from the state court proceeding and the federal habeas proceeding and are satisfied that Brown has failed to make the requisite "substantial showing" that his Sixth Amendment right to effective assistance of counsel was denied by trial counsel's failure to investigate and present additional mitigating evidence. Thus, we deny Brown's application for a certificate of appealability of this issue.

## V.

For the foregoing reasons, we hold that North Carolina has not regularly and consistently applied its procedural default rule in section 15A–1419(a) to claims challenging unanimity instructions and, therefore, that the district court erred in holding that the state bar is an adequate and independent ground procedurally barring federal court consideration of Brown's unanimity claim on federal habeas review. Accordingly, we remand this case for consideration by the district court of the merits of the unanimity claim.

Because Brown has failed to make a substantial showing that his constitutional rights were violated by his counsel's failure to present additional mitigating evidence at his capital sentencing hearing, we deny a certificate of appealability on that issue.

*DISMISSED IN PART, REVERSED IN PART, AND REMANDED.*