UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

SAMMY CRYSTAL PERKINS,
          *Petitioner-Appellant,*

v.

R. C. LEE, Warden, Central Prison,
Raleigh, North Carolina,
          *Respondent-Appellee.*

No. 02-25

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(CA-99-604-5-F-HC)

Argued: June 3, 2003

Decided: July 25, 2003

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Traxler wrote the opinion, in which Judge Michael and Judge King joined.

---

## COUNSEL

**ARGUED:** Edwin Love West, III, EDWIN L. WEST, III, P.L.L.C., Wilmington, North Carolina; Kathryn L. VandenBerg, Hillsborough, North Carolina, for Appellant. Steven Mark Arbogast, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Roy Cooper, Attorney General of North Carolina, NORTH CAROLINA

DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

TRAXLER, Circuit Judge:

Sammy Crystal Perkins was convicted by a North Carolina jury for the capital murder and rape of LaSheena Renae "JoJo" Moore. Perkins was sentenced to death for the capital murder conviction and to life imprisonment for the rape conviction. After unsuccessfully appealing his convictions in state court on direct review and in state habeas proceedings, Perkins filed a petition for writ of habeas corpus in federal district court. *See* 28 U.S.C.A. § 2254 (West 1994 & Supp. 2003). The district court dismissed the petition and Perkins sought an appeal in this court. Because at least one judge of the panel concluded that Perkins had "made a substantial showing of the denial of a constitutional right," 28 U.S.C.A. § 2253(c)(2) (West Supp. 2003), with respect to each of his claims, we granted a certificate of appealability, *see* 28 U.S.C.A. § 2253(c)(3) (West Supp. 2003). We now affirm.

I.

On April 19, 1992, at approximately 3:00 a.m., petitioner Perkins raped seven-year-old JoJo Moore in her bed while he smothered her to death with a pillow. The North Carolina Supreme Court described the specific facts surrounding JoJo's murder as follows:

> On 18 April 1992 [Perkins] was living with his mother in Greenville. After visiting with his family and drinking several beers, [Perkins] went to the home of Theia Esther Moore, a woman he had been dating for two months and had known for ten or eleven years. Moore lived in the house

with her two children and four grandchildren, one of whom was the victim. Moore shared a room with two of her grandchildren, three-year-old Michael "Champ" Moore and the victim, who slept together on a daybed.

After leaving the Moore house for a short time, [Perkins] returned and drank more beer and smoked crack cocaine. At approximately 3:00 a.m. on 19 April, [Perkins] entered Moore's bedroom, where she and her two grandchildren were present. [Perkins] watched a pornographic video and then tried to have sex with Moore, who was surprised that he was in the room. Moore discovered a large butcher knife under her pillow, and [Perkins] explained that he had used it to open a can of beer.

Moore ordered [Perkins] out of the house. As she walked him to the door, Champ rose from his bed and claimed that [Perkins] had bitten his finger. After [Perkins] left, he called Moore twice to insist that he had not bitten Champ. Moore then went to sleep; when she awoke at around 9:00 a.m., she observed that Champ's finger was swollen. At approximately 11:30 a.m., while the family was preparing to go to church for Easter services, Moore discovered that JoJo was dead.

The evidence tended to show that sometime early that morning, [Perkins] had mounted the victim, held a pillow over her face, and had sex with her. The medical examiner determined that the victim died of suffocation and estimated that the victim's mouth and nose were covered for a period of between three to seven minutes before she became unconscious.

[Perkins] testified that on the night and morning in question, he had been drinking and smoking crack cocaine. He stated that JoJo awoke while he was having sex with Moore. He put a pillow over her face so that she would not see them. He said that he administered CPR, which he thought was successful in resuscitating her. He then went to the kitchen for a beer, used a knife to open the can, and placed the knife

> by Moore's bed. Sometime in the morning, he took Champ
> to the bathroom. Champ stuck his finger in [Perkins's]
> mouth, and [Perkins] bit it. He said Moore threw him out of
> the house after discovering the knife and the biting incident.
>
> [Perkins], who was in a wheelchair by the time of trial,
> explained that he suffers from a debilitative muscular dis-
> ease called myasthenia gravis [which] precluded him from
> having sexual intercourse in any position where he would
> have to support himself with his arms. On cross-
> examination [Perkins] admitted that he had a prior convic-
> tion for attempted rape in 1981 and was released from
> prison in 1986. He also had prior convictions for possession
> with intent to sell and deliver heroin and cocaine in 1988
> and 1989.

*State v. Perkins*, 481 S.E.2d 25, 28 (N.C. 1997). At the conclusion of
the guilt phase of the trial, the jury convicted Perkins of the first-
degree rape and first-degree murder of JoJo Moore under the theories
of premeditation and deliberation and felony murder.

A capital sentencing proceeding was then held pursuant to N.C.
Gen. Stat. § 15A-2000 (2001). At the conclusion of the sentencing
hearing, the jury found all three aggravating circumstances submitted
to them to be present: (1) Perkins had been previously convicted of
a felony involving the use or threat of violence; (2) Perkins commit-
ted the murder while engaged in the commission of or an attempt to
commit first-degree rape; and (3) the murder was especially heinous,
atrocious, or cruel. The jury found one statutory and five nonstatutory
mitigating circumstances, but concluded that the mitigating circum-
stances did not outweigh the aggravating circumstances, and unani-
mously returned a recommendation that Perkins be sentenced to death
for the murder conviction. *See Perkins*, 481 S.E.2d at 28. The death
sentence was imposed by the trial court for the first-degree murder,
along with a consecutive sentence of life imprisonment for the first-
degree rape conviction. *See id.* at 27.

On appeal, the North Carolina Supreme Court upheld Perkins's
conviction and death sentence, *see id.* at 27-28, and the United States
Supreme Court denied Perkins's petition for writ of certiorari, *see*

*Perkins v. North Carolina*, 522 U.S. 837 (1997). Perkins then filed a motion for appropriate relief ("MAR"), *see* N.C. Gen. Stat. § 15A-1415 (2001), in Pitt County Superior Court in September 1998, which was denied in June 1999. The North Carolina Supreme Court denied review. *See State v. Perkins*, 545 S.E.2d 744 (2000).

Perkins filed his § 2254 petition for habeas relief in district court in September 1999. The state filed an answer and motion for summary judgment in December 1999. In March 2000, however, Perkins filed a motion for leave to conduct discovery into a claim that his trial counsel had been ineffective in their presentation of mental health evidence, a motion for leave to proceed *ex parte* in moving for expert assistance, and an *ex parte* motion for funds to hire expert assistance to pursue his ineffective assistance of counsel claim. The district court denied Perkins's motion for leave to proceed *ex parte* and for funds for expert assistance, granted the state's motion for summary judgment, and dismissed Perkins's petition for habeas relief. This appeal followed.

II.

We begin with Perkins's claim that his trial counsel were ineffective in their presentation of expert mental health testimony, depriving him of his Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

During Perkins's trial, Dr. Billy Royal, a forensic psychiatrist, testified as an expert for the defense. In addition to offering testimony concerning Perkins's myasthenia gravis condition, Dr. Royal offered testimony concerning Perkins's use of prescription drugs and their accompanying side effects, and of Perkins's reported abuse of alcohol, cocaine, and heroin. Among other things, Royal testified that Perkins was under the influence of a mental or emotional disturbance, that his ability to conform his conduct to the requirements of the law was impaired, and that his mental illness and drug use affected his ability to plan and to carry out planned activities.

Before the state MAR court, Perkins first claimed that his trial counsel were ineffective in failing to properly elicit evidence in support of his diminished capacity defense from Dr. Royal and in failing

to properly rehabilitate Dr. Royal on redirect examination. To further develop these claims, Perkins sought the appointment and assistance of psychological, psychiatric, and neuro-psychological experts. The state MAR court, however, denied the claim and the motion for expert assistance. Although represented by new counsel, Perkins had not pursued this claim in his direct appeal. Thus, the state MAR court ruled that the claim was procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) (2001), because Perkins could have raised it on direct appeal and had failed to demonstrate good cause and actual prejudice, or that a fundamental miscarriage of justice would result. *See* N.C. Gen. Stat. § 15A-1419(b)(2001). The court also ruled that the claim was without merit and that there was no need for an evidentiary hearing. *See* N.C. Gen. Stat. § 15A-1420(c) (2001).

On federal habeas review, Perkins again raised the ineffective assistance of counsel claim, alleging that trial counsel had failed to prepare and present a coherent mental health defense based upon Perkins's history of substance abuse, prescription drug use, and mental illness. Perkins asserted that counsel's preparation and presentation of Dr. Royal's testimony was ineffective and, further, that the state court's failure to provide him with expert assistance on collateral review prevented him from developing other potential mental health claims. The district court ruled that, as a result of the state MAR court's application of the procedural bar, Perkins had procedurally defaulted federal habeas review of the merits of the claim as well.

It is well settled that a federal habeas court may not review constitutional claims when a state court has declined to review them on the merits "pursuant to an independent and adequate state procedural rule, . . . unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989). The question of whether a particular state procedure is independent and adequate is one of federal, not state, law. *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988). "A state rule is adequate if it is firmly established and regularly or consistently applied by the state court, and independent if it does not depend on a federal constitutional rul-

ing." *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003) (internal citations, quotation marks, and alteration omitted).

The basis for the district court's determination that Perkins procedurally defaulted his ineffective assistance of counsel claim is N.C. Gen. Stat. § 15A-1419(a)(3), which bars state court review of issues raised in a motion for appropriate relief if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue . . . but did not do so." Ineffective assistance of counsel claims are not excepted from § 15A-1419(a)(3)'s requirement that claims be raised on direct appeal. Such "claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 557 S.E.2d 500, 524-25 (N.C. 2001). Section 15A-1419 does not set forth "a general rule that *any* claim not brought on direct appeal is forfeited on state collateral review"; rather "the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." *Id.* at 525 (quoting *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000)). If the reviewing court determines that the claim "ha[s] been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 525.[1]

As a general rule, § 15A-1419(a)(3) is considered to be an independent and adequate state law ground for finding that a defendant has procedurally defaulted federal habeas review. *See Brown*, 319 F.3d at

---

[1]Recently, in *United States v. Massaro*, 123 S. Ct. 1690, 1693 (2003), the Supreme Court held that defendants convicted of federal offenses may always raise ineffective assistance of counsel claims in a collateral proceeding under 28 U.S.C.A. § 2255 (West Supp. 2003), regardless of whether the claim could have been raised on direct appeal. Although the majority of the federal courts of appeals, including ours, already adhered to this view, *see id.* at 1695, and "[a] growing majority of state courts now follow [it]" as well, *id.*, the *Massaro* holding is not based upon constitutional mandates. In habeas proceedings brought under § 2254 to challenge state court convictions, we are constrained to respect the contrary view of the North Carolina Supreme Court.

170; *Fisher v. Lee*, 215 F.3d 438, 456 (4th Cir. 2000). However, if the bar "ha[s] *not* been regularly and consistently applied by the state court to a particular type of federal constitutional claim, [it] cannot be considered an adequate state law ground barring federal court review of the merits of that claim." *Brown*, 319 F.3d at 170; *see Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."). Without this exception, "state courts would be able to engage in an arbitrary application of state procedural rules to thwart federal habeas review of constitutional issues that the 'adequacy' requirement was designed to prevent." *Brown*, 319 F.3d at 170.

Perkins asserts that he did not procedurally default federal habeas review of his ineffective assistance of counsel claim because § 15A-1419(a)(3) has not been regularly and consistently applied by the North Carolina courts to ineffective assistance of counsel claims challenging counsel's presentation of expert mental health evidence. To assist us in this inquiry, the parties have directed us to twenty-seven state court cases. In four cases, the state raised the bar as a defense to a merits determination and the bar was applied by the state MAR court. In one case, the state raised the bar as a defense to a merits determination, but the state MAR court refused to apply the bar after concluding that the defendant had not been in a position to adequately raise the claim on direct appeal and that he had shown good cause that it be determined on the merits. In eight cases, the state did not raise the bar as a defense to a merits determination. And, in the remainder of the cases, there is no indication whether the bar was raised by the state in an attempt to defeat a merits determination.[2]

Perkins asserts that, because the state courts reached the merits in all but four of the twenty-seven cases, we should conclude that the state MAR courts have not regularly and consistently applied the bar.

[2]Perkins disputes the relevance of one case referenced by the state, contending that it did not involve an ineffective assistance of counsel claim, but rather a claim that the defendant had been deprived of his right to present a meaningful defense. Because its inclusion is not determinative of the outcome, we have no need to decide whether it is in fact procedurally analogous.

We disagree. In determining whether § 15A-1419(a)(3) has been regularly and consistently applied by the North Carolina courts to cases that are procedurally analogous to Perkins's case, we can only consider those cases in which the state actually raised the procedural bar as a defense. *See Meadows v. Legursky*, 904 F.2d 903, 907 (4th Cir. 1990) (en banc). We can envision a number of circumstances in which the state may intentionally decline to seek application of a procedural bar to an ineffective assistance of counsel claim, and we are ill-prepared to second-guess such determinations made in cases that are not actively before us. *Cf. Hudson v. Hunt*, 235 F.3d 892, 895 n.1 (4th Cir. 2000) (noting that although this court possesses the discretion to decline to consider the merits of a defaulted claim notwithstanding the state's failure to raise it, "when a state intentionally has declined to pursue the defense for strategic reasons, the court should be circumspect in addressing the issue." (internal quotation marks omitted)). And, unless the state advances the issue of procedural default, we cannot say that the state court *applied* the bar in an inconsistent fashion because we have no reason to believe that the court considered the bar in the first instance.

In sum, of the twenty-seven "procedurally analogous" cases brought to our attention, we have been directed to a single case in which the state MAR court refused to apply the procedural bar in a case where the bar was raised by the state. However, "'consistent or regular application of a state rule of procedural default does not require that the state court show an undeviating adherence to such rule admitting of no exception so long as the rule has as a general rule been applied in the vast majority of cases.'" *Brown*, 319 F.3d at 170 (quoting *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir. 1999) (alteration omitted); *see McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000) (holding that for the petitioner "to make a colorable showing that section 15A-1419(a)(3) is not consistently and regularly applied to ineffective assistance claims, he would need to cite a non-negligible number of cases in which ineffective assistance claims could have been brought on direct review but were not, and in which the collateral review court nonetheless failed to bar the claim under section 15A-1419(a)(3) because the claim was an ineffective assistance claim.").[3] We cannot say, based on this single deviation, that the

---

[3] Our holding in *Brown*, which is relied upon by Perkins, does not compel a different conclusion. In *Brown*, the parties directed us to ten cases

North Carolina courts have failed to apply § 15A-1419(a)(3) in a reg-
ular and consistent manner to cases that are procedurally analogous
to Perkins's case based upon this single deviation. And, because Per-
kins does not argue cause and prejudice, or that our failure to consider
the merits of this issue will result in a fundamental miscarriage of jus-
tice, we are precluded from reviewing the merits of Perkins's claim.

Accordingly, we affirm the district court's dismissal of Perkins's
ineffective assistance of counsel claim on the grounds of procedural
default. We also affirm the district court's denial of Perkins's motion
for the appointment of mental health experts and for an evidentiary
hearing to explore the ineffectiveness claim.

### III.

Perkins next asserts that he was denied his constitutional right to
due process and to a fair and impartial jury, in violation of the Sixth
and Fourteenth Amendments, because one or more of the jurors
formed an opinion prematurely as to his guilt and as to the appropri-
ateness of a death sentence. Because this claim was rejected by the
North Carolina Supreme Court on the merits, habeas relief is only
warranted if Perkins can demonstrate that the adjudication of his
claim by the state court resulted in "a decision that was contrary to,

---

in which capital defendants sought habeas relief from their sentences of
death on the ground that their juries had received a unanimity instruction
for mitigating evidence which was allegedly indistinguishable from that
struck down by the Supreme Court in *McKoy v. North Carolina*, 494
U.S. 433 (1990). The procedurally analogous claims of four defendants
had been found to be procedurally barred under § 15A-1419(a) by a state
MAR court. Four other defendants had received a merits determination
of their unanimity claims by the state court, despite the fact that the state
had specifically raised the procedural bar as a defense. In one case, there
was no indication that the state MAR court was presented with an argu-
ment that the claim was procedurally barred, and in the final case it
appeared that the state court was not presented with the unanimity claim
at all. Based upon our review of these cases, we held that "Brown ha[d]
made a colorable showing that . . . the state MAR courts have not consis-
tently applied the bar to unanimity claims raised by defendants." *Brown*,
319 F.3d at 175.

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d).

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. "[W]hen a habeas petitioner bases a juror bias claim on improper communication between, or improper influence exerted by, a nonjuror upon a juror . . ., he must first establish both that an unauthorized contact was made and that it was of such a character as to reasonably draw into question the integrity of the verdict." *Fullwood v. Lee*, 290 F.3d 663, 678 (4th Cir. 2002) (internal quotation marks omitted). "Private communications, possibly prejudicial, between jurors and third persons . . . are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Gray v. Hutto*, 648 F.2d 210, 211 (4th Cir. 1981) (internal quotation marks omitted). Likewise, when a juror "form[s] and express[es] a premature conviction of guilt," the court "must conclude that the juror's comment, indubitably improper, [is] presumptively prejudicial, with the burden resting heavily upon the prosecution that such communication . . . was harmless to the defendant." *Id.*

During Perkins's trial, Nancy Letchworth, a deputy clerk of the superior court, notified the trial judge that she had learned from another deputy clerk, Tammy Beachum, that an improper communication may have taken place between Juror Alecia Staton and her babysitter, Ms. Wendy Clark. Apparently, Ms. Beachum and Juror Staton both employed Ms. Clark as a babysitter. At some point at or near the conclusion of Perkins's case, Ms. Clark told Ms. Beachum that Juror Staton had discussed the case with her and, in particular, had told her that the jurors had already decided that Perkins was guilty and that all but one had already decided that the death penalty was warranted. Ms. Clark also claimed that Juror Staton had related to her some details about pictures that had been shown during the trial and about the testimony of a particular witness.

Upon being notified of the alleged conversation, the trial court consulted with counsel for the state and the defendant and convened a hearing out of the presence of the jury to investigate Ms. Clark's

statements. First, the trial judge and counsel for each party questioned Ms. Letchworth to determine what she had been told by Ms. Beachum, and then questioned Ms. Beachum to determine what she had been told by Ms. Clark. Next, the trial judge brought Ms. Clark in for questioning about her alleged conversation with Juror Staton. Finally, the trial judge, after consulting with counsel and receiving questions that they wished to be propounded to the jurors, individually questioned every juror. The jurors were questioned in order of their juror number, and sequestered from those yet to be questioned until the end of the court's inquiry. Every juror specifically denied having discussed or formed an opinion as to the guilt or innocence of Perkins, denied having expressed an opinion as to the guilt or innocence of Perkins, and denied having formed or expressed an opinion as to what punishment would be appropriate if Perkins was ultimately found guilty. Every juror also denied that any improper communications had occurred in their presence and denied hearing any other jurors express an opinion as to guilt or the appropriate punishment. Juror Staton was questioned in turn. In addition to denying that she had formed or expressed an opinion as to guilt or punishment, she specifically denied telling Ms. Clark that the jurors had reached an opinion as to guilt or telling Ms. Clark that all but one had decided to impose the death sentence.

At the conclusion of the hearing, the trial judge found that a conversation had taken place between Juror Staton and her babysitter, the exact contents of which he could not determine. However, the trial judge also found that all fourteen jurors had, under oath, "denied having any opinion as to the guilt or innocence of the defendant" and had "not expressed an opinion as to the guilt or innocence of the defendant." J.A. 467. The court also found that none of the jurors had "formed or expressed an opinion as to what punishment should be imposed in the case." J.A. 467. The trial judge found that there had been no juror misconduct, denied Perkins's motion for a mistrial, denied Perkins's motion to excuse Juror Staton for cause, and resumed the trial.

On appeal, the North Carolina Supreme Court held that the trial court "made findings of fact consistent with the evidence" and did not abuse its discretion by "conclud[ing] that there had been no juror misconduct." *Perkins*, 481 S.E.2d at 35; *see State v. Bonney*, 405 S.E.2d

145, 152 (N.C. 1991) (noting that a trial court's decision will not be disturbed unless there is a clear showing that the court abused its discretion); *cf. United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988) (noting that trial courts are granted broad discretion in dealing with possible jury misconduct). Accordingly, the state court rejected Perkins's claim of jury misconduct on the merits and affirmed the trial court's refusal to declare a mistrial or to excuse Juror Staton.

We cannot say that the state court's adjudication of this claim resulted in a decision that was contrary to or an unreasonable application of clearly established law or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the trial court. Here, there was no contention or evidence that Juror Staton was improperly influenced or otherwise was made aware of extraneous information through her contact with Ms. Clark. Rather, the allegation of juror misconduct stemmed from Ms. Clark's allegation that Juror Staton had related to her various internal discussions of the jury concerning Perkins's trial and, in particular, discussions which reflected that the jurors had prematurely discussed and formed opinions as to Perkins's guilt and appropriate sentence. Juror Staton denied having discussed these matters with Ms. Clark. She also denied having formed an opinion as to whether Perkins was guilty or what punishment she believed would be appropriate, as did the other thirteen jurors. As noted by the North Carolina Supreme Court, the trial court's finding that there had been no improper jury conduct was consistent with and appropriate under the evidence presented.

For similar reasons, Perkins has also failed to establish that he is entitled to an evidentiary hearing into the alleged juror misconduct. A federal habeas court may not grant a hearing to a habeas petitioner if the petitioner "failed to develop the factual basis of a claim in State court" unless certain other requirements are met. 28 U.S.C.A. § 2254(e)(2) (West Supp. 2003). Because the state does not claim that Perkins failed to develop the factual basis of his juror misconduct claim, § 2254(e) is no bar to a federal evidentiary hearing. *See Fullwood*, 290 F.3d at 681. But this does not end the inquiry. "[E]ven though section 2254(e)(2) presents no bar to a hearing, an evidentiary hearing is not automatic — the district court is permitted to hold a hearing only if the petitioner alleges additional facts that, if true,

would entitle him to relief." *Id.* (internal quotation marks omitted). "Moreover, petitioner must establish one of the six factors set forth in *Townsend v. Sain*, 372 U.S. 293, 312 (1963)" to obtain a hearing. *Id.*[4]

In this case, the state trial court conducted a full and fair hearing, with trial counsel's input and participation, into the alleged juror misconduct and concluded that there was none. On federal habeas review, Perkins has pointed to no witnesses or available testimony or information that was not elicited by the state court that would entitle him to relief. And, as noted above, the state trial court's finding of no juror misconduct was supported by the evidence taken. Accordingly, the district court properly concluded that Perkins was not entitled to a federal evidentiary hearing to further explore the alleged juror misconduct.

IV.

Perkins's final claim on federal habeas review is that the trial court violated his Sixth and Fourteenth Amendment rights to an impartial jury by dismissing prospective juror William Jackson for cause based upon Jackson's inability to respond to a question about whether he could impose the death penalty.

During death qualification of a jury, the trial court may exclude a potential juror based upon his or her personal views on capital punishment if "the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instruc-

---

[4]The six factors set forth in *Townsend* are:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Fullwood*, 290 F.3d at 681 n.7 (quoting *Townsend*, 372 U.S. at 313).

tions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted). "[T]he question of juror bias is to be resolved by the trial judge's assessment of demeanor and credibility, and . . . such assessments are to be accorded a presumption of correctness under 28 U.S.C.A. § 2254(d)." *Maynard v. Dixon*, 943 F.2d 407, 415 (4th Cir. 1991). Juror bias need not be proved with "unmistakable clarity." *Wainwright*, 469 U.S. at 424. Rather, when juror responses are less than clear, "the determination made by the trial court, based on its eyeing the juror, is presumed to be consistent with the applicable standard." *Maynard*, 943 F.2d at 415.

In this case, Jackson was questioned by the trial court as to whether, in view of his "personal beliefs . . . about the death penalty," he "would be able or unable to vote for a recommendation of the death penalty even though . . . satisfied beyond a reasonable doubt" of the things required by law to impose it. J.A. 15. In response, Jackson stated that he did not "know whether [he] could vote on the death penalty" and was "unable to respond" to the question. J.A. 16. The North Carolina Supreme Court concluded that the trial judge, who was in a position to hear "Jackson's tone of voice and observe[ ] his demeanor," did not err in excusing Jackson for cause. *Perkins*, 481 S.E.2d at 30.

Because we cannot say that the North Carolina Supreme Court's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C.A. § 2254(d), we affirm the district court's dismissal of this claim as well.

## V.

For the foregoing reasons, we affirm the district court's denial of Perkins's motion for leave to proceed *ex parte* and for funds for expert assistance and dismissal of Perkins's petition for writ of habeas corpus.

*AFFIRMED*