# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-4372

ARIEL GOMEZ,

*Petitioner-Appellant,*

v.

DANNY JAIMET,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 7192—**Elaine E. Bucklo**, *Judge.*

_____

ARGUED OCTOBER 22, 2003—DECIDED NOVEMBER 26, 2003

_____


Before FLAUM, *Chief Judge*, and EASTERBROOK and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge*. In 1999, an Illinois trial court convicted Ariel Gomez of first-degree murder and sentenced him to a thirty-five year prison term. Gomez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his constitutional right to testify in his own defense was denied by the state trial court and that his trial counsel was constitutionally ineffective for failing to present Gomez's testimony. The district court denied the writ finding each of Gomez's constitutional claims either without merit or defaulted. *Gomez v. Pierson*, 232 F. Supp. 2d 888 (N.D. Ill. 2002). Gomez's appeal is limited to the ineffective

assistance of counsel claim. For the reasons stated herein, we affirm the district court's decision.

## I.  Background

Gomez's conviction arose from a June 1997 incident at the intersection of Cicero and Diversey in Chicago during which a man waiting for a bus was fatally shot. A crowd had gathered in the street after the Chicago Bulls won their fifth National Basketball Association championship— some people were waiting for a bus and others were celebrating the victory. Gomez, then seventeen years old, and four of his friends, were driving around in Gomez's mother's Nissan Pathfinder. The group stopped at the Cicero/Diversey intersection and several men in the crowd exchanged gang signs with them. These men also threw bricks and stones at the Pathfinder. Gomez drove off and stopped on a side street to retreive a .45-caliber semiautomatic pistol that he had earlier placed under the vehicle's hood. One of his friends, Jose Dominguez, then drove back towards the intersection while Gomez sat in the passenger window and pointed the gun over the top of the vehicle. The crowd began to scatter and Gomez fired the gun in the direction of the group. Two bullets entered the victim, Conception Diaz. Diaz died of multiple gunshot wounds, two of which lacerated his heart and lung.

Eyewitness accounts of how many shots were fired vary somewhat, but generally allege multiple shots. Rey Arroyo testified that the shooter's gun was chrome and that he heard three shots. Arroyo testified that he did not hear any gunshots that sounded different from those gunshots. George Soria witnessed the incident from his car. Soria, familiar with sounds of weapons from his employment background, testified that he heard two or three shots and that no shots were fired other than those coming from the

Pathfinder. Stipulations established that several other witnesses heard up to five shots.

Because they feared someone might have seen the Pathfinder's license plate, Gomez and his friends decided to wreck the Pathfinder and tell his mother that it had been stolen. Gomez and Dominguez carried out an elaborate scheme so that the car would crash into a wall while no one was driving it. After the crash, Gomez returned home, where he was later arrested. In Gomez's statement to police, he said that he had hidden in the house the gun that he had fired into the crowd. Ballistics tests later established that the gun recovered from Gomez's house was not the weapon that fired the bullets that were subsequently removed from the victim.

Gomez was charged with first-degree murder and tried in a joint bench trial with his four co-defendants. Although the cases were technically severed, the judge heard evidence against all of the defendants simultaneously. The trial court inferred that Gomez used another gun to shoot the victim and, just as he elaborately planned the disposal of the Pathfinder, Gomez disposed of the gun used in the shooting. The court noted that there was no evidence of anyone else besides Gomez firing a weapon and that Gomez himself admitted that no one in the crowd on the street had any guns. The court found Gomez guilty of murder. Dominguez was also found guilty of first-degree murder while the other three friends riding in the Pathfinder were acquitted.

Gomez appealed to the Illinois Appellate Court, where he challenged the sufficiency of the evidence and argued, among other things, that he did not knowingly and voluntarily waive the right to testify and that his trial counsel was ineffective. Eight months after the Illinois Appellate Court affirmed Gomez's conviction, the same court reversed Dominguez's conviction, holding that there was insufficient

evidence of Gomez's guilt on the murder charge to hold Dominguez accountable.

Gomez filed a habeas petition in the district court. The district court denied the petition finding that Gomez's ineffective assistance of counsel claim, premised on his counsel's failure to advise or call him to testify, was procedurally defaulted. The district court based its finding on the fact that the state appellate court disposed of that claim on the adequate and independent state ground of waiver, resulting from Gomez's failure to raise that claim in his motion for new trial. Furthermore, the district court found that Gomez failed to remove the procedural bar to his claim by proving that he was actually innocent of the crime.

This Court granted Gomez's application for a certificate of appealability.

## II. DISCUSSION

Generally, federal courts cannot review a petition for writ of habeas corpus premised on questions of federal law that have not been properly presented to the state court. Under this principle, absent a showing of cause and prejudice, federal habeas corpus review is precluded when a state court did not reach a federal issue because it applied a state procedural rule. *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977). This rule promotes federalism by respecting the importance of state procedural rules and the finality of state court judgments. Furthermore, it discourages "sandbagging" on the part of defense lawyers who may withhold constitutional claims in state proceedings to have them heard first in federal court.

Illinois has a procedural rule providing that if a defendant fails to raise a claim of ineffective assistance of counsel in his motion for a new trial, the claim is waived

on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Keys*, 195 Ill. App. 3d 370, 376 (1990). When, under this rule, the state court declines to review a claim not properly raised, the state court decision rests upon a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Whitehead v. Cowan*, 263 F.3d 708, 726-27 (7th Cir. 2001) (finding the state supreme court's determination that defendant's claims were waived because they were not raised during trial or post-trial brief constitutes an independent and adequate state grounds for its decision).

An adequate and independent state ground bars federal habeas review of constitutional claims only if "the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on the state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Here, the Illinois Appellate Court was the last state court to consider Gomez's case; the Illinois Supreme Court denied review. The Illinois Appellate Court "clearly and expressly" found that Gomez had waived his ineffective assistance of counsel claim by failing to raise it in the motion for new trial before it discussed the merits of the claim. *People v. Gomez*, No. 1-98-4474, at 12 ("The State correctly notes that defendant failed to raise this issue in his motion for a new trial and has therefore waived it on appeal. . . . Waiver aside . . . ."). The Appellate Court further noted that there was no conflict of interest present that would preclude waiver because Gomez's motion for a new trial was prepared by a different attorney than the one who represented him at trial. *Id.*

Against this backdrop, we will consider Gomez's arguments that the procedural default rule is precluded in this case and that the narrow exception to procedural default based on actual innocence should be applied.

A.  *Massaro v. United States*

Gomez argues that the recent Supreme Court case, *Massaro v. United States*, 123 S.Ct. 1960 (2003) removes the procedural bar to his ineffective assistance of counsel claim and thereby allows this Court to review that claim on its merits. In *Massaro*, the Supreme Court held that a defendant challenging a federal conviction under 28 U.S.C. § 2255 could raise an ineffective assistance of counsel claim in a collateral proceeding, even though the defendant could have, but did not, raise the claim on direct appeal. Gomez argues that the *Massaro* rule should apply with equal force to proceedings challenging a state conviction under 28 U.S.C. § 2254.

Echoing *Massaro*'s reasoning, Gomez argues that direct appeal is not the forum best suited to determining the adequacy of representation because guilt or innocence is generally the issue of primary importance. Indeed, *Massaro* concluded that requiring criminal defendants to bring ineffective assistance of counsel claims on direct appeals of federal convictions does not promote the objectives of the procedural default doctrine, namely conservation of judicial resources and respect for the finality of judgments. While logically these arguments may extend to ineffective assistance claims arising out of state court convictions, the holding of *Massaro* is not legally binding on states. *Massaro* was not a constitutional decision. *Id.* at 1693 ("The procedural default rule is neither a statutory nor a constitutional requirement . . . ."). While Illinois law on waiver may be in conflict with the federal court's own procedural default rule, it continues to operate as an adequate and independent state ground for barring federal habeas review of his ineffective assistance of counsel claim.

This position was taken in the only appellate decision to date dealing with *Massaro*'s application to proceedings challenging state convictions. *See Perkins v. Lee*, 72 Fed.

Appx. 4, 9 n.1 (4th Cir. 2003). As the Fourth Circuit found itself "constrained to respect the contrary view of the North Carolina Supreme Court," we are constrained by the view of Illinois. *Id.*

### B. Fundamental Miscarriage of Justice

Next, Gomez argues that his claim of actual innocence overcomes the procedural bar to his ineffective assistance of counsel claim. Without doubt, a disturbing aspect of this case is that Dominguez's conviction was overturned by a panel of the Illinois Appellate Court on the basis that there was insufficient evidence to prove that Gomez actually fired the shots killing the victim. This decision was rendered just eight months after the denial of Gomez's own appeal by another panel of the Appellate Court and, most interestingly, both panels had a judge in common. The evidence against Dominguez was similar to the evidence against Gomez; the only difference was that Dominguez's own statement to the police was admitted. Portions of Gomez's statement were admitted against Dominguez, but not a sentence claiming that nobody else in the crowd had any weapons.

In any event, the Constitution does not require that verdicts against an accomplice and his principal be consistent. The fact that Dominguez's conviction was overturned is not grounds in itself for finding that Gomez's case overcomes the procedural bar to his ineffective assistance of counsel claim. When a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates: (1) cause for and actual prejudice arising from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." *Wainwright v. Sykes*, 433 U.S. at 87; *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir.

1996). Gomez does not argue cause and prejudice on this appeal, therefore we focus our attention on the second exception.

The fundamental-miscarriage-of-justice exception applies only in the "extremely rare" and "extraordinary case" where the petitioner is actually innocent of the crime for which he is imprisoned. *Schlup v. Delo*, 513 U.S. 298 (1995). To support a colorable claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. As a mixed question of law and fact, we review the *Schlup* probability determination that no reasonable juror would convict *de novo. Bell v. Pierson*, 267 F.3d 544, 552 (7th Cir. 2001).

The evidence not considered at trial with which Gomez comes forward includes: (1) the statements of Gomez's co-defendants and (2) Gomez's own testimony. Respondent argues that this evidence cannot be considered new because it is not newly discovered, *i.e.*, Gomez was aware of its existence at the time of trial. However, nothing in *Schlup* indicates that there is such a strict limitation on the sort of evidence that may be considered in the probability determination. All *Schlup* requires is that the new evidence is reliable and that it was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998). While a petitioner claiming that his factual innocence alone entitles him to habeas corpus relief must present newly discovered evidence, *see Herrera v. Collins*,

506 U.S. 390 (1993),[1] Gomez is using actual innocence solely as a basis, or a gateway, for having his otherwise barred constitutional claims heard. The majority opinion in *Schlup* recognized this critical distinction with respect to *Herrera* from the outset of the case and we should not consider the absence of a newly "discovered" requirement in *Schlup* a mere oversight.

Particularly in a case where the underlying constitutional violation claimed is the ineffective assistance of counsel premised on a failure to present evidence,[2] a requirement that new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway. Here, the very premise of the ineffectiveness claim is that the trial counsel knew of yet failed to present evidence that Gomez is alleging proves his innocence. If procedurally defaulted ineffective assistance of counsel claims may be heard upon a showing of actual innocence, then it would defy reason to block review of actual innocence based on what could later amount to the counsel's constitutionally defective representation. The burden for proving actual innocence in gateway cases is sufficiently stringent and it would be inappropriate and unnecessary to develop an additional threshold requirement that was not sanctioned by the Supreme Court. We agree with the Eighth Circuit that merely putting a different spin on evidence that was presented to the jury does not satisfy the

---

[1] Although language in the majority opinion in *Herrera* appears to bar habeas claims based solely on actual innocence, the concurring opinion of Justices O'Connor and Kennedy makes clear that a majority of justices agree that habeas relief would be warranted upon a truly persuasive showing of actual innocence, at least in a capital case. *Herrera*, 506 U.S. at 427 (O'Connor, J., concurring).

[2] Gomez's ineffective assistance of counsel claim is premised on his trial counsel's failure to call Gomez as a witness at trial.

*Schlup* requirements, *see Bannister v. Delo*, 100 F.3d 610, 618 (8th Cir. 1996), but if a petitioner comes forth with evidence that was genuinely not presented to the trier of fact then no bar exists to the habeas court evaluating whether the evidence is strong enough to establish the petitioner's actual innocence.

Ultimately, however, Gomez fails to satisfy this stringent standard. We are not convinced that it is more likely than not that no reasonable juror would have convicted him in light of the statements of his co-defendants and his own testimony. Gomez argues that his co-defendants' statements are beneficial to him for the following reasons: (1) Dominguez's statement asserts that only one bullet remained in Gomez's gun prior to the shooting; (2) no statement says that Gomez was seen firing all of the shots; and (3) no statement references a gun other than the one found at Gomez's house. Additionally, Gomez argues that his own testimony would clarify the statement that he gave on the night of the shooting that no one on the street had a weapon and would strongly support that he did not have more than one gun. As for his "no other weapons" statement, Gomez claims that he had no way of knowing such a fact given the size of the group and the darkness of the night. Moreover, he claims that he never actually made the statement—he only told police that he could not recall seeing another weapon (he claims that he overlooked his error when he signed the statement).

This evidence is insufficient to warrant applying the "extremely rare" actual innocence exception. First of all, while the co-defendants' statements do add some credit to Gomez's "one gun" theory in that they only mention Gomez having one gun, they also corroborate inculpatory facts presented at trial. The statements agree that Gomez fired a gun at least once from the front passenger-seat window of the vehicle. Multiple witnesses testified that they saw someone shooting from the front passenger seat of the

Pathfinder. Just as no witnesses claimed to either see or hear gunshots coming from anywhere but the Pathfinder, the co-defendants' statements make no reference to an exchange of gunfire or other shooters.

Moreover, the new evidence does not prove Gomez's theory of innocence, *i.e.*, that he did not actually fire the gun that shot and killed the victim. Nothing in the statements directly ties the gun that the police recovered from Gomez's house to the gun he used at the scene of the crime. While the statements describe the gun as chrome (the gun recovered from Gomez's house was chrome), no statement explains what Gomez did with the gun after the shooting. Only Gomez's statement mentions what happened to the gun (he put it on a shelf by the TV in his house). While Gomez argues that the lack of any mention of a second gun by his co-defendants leads to the conclusion that the gun recovered from his house was the one he fired out of the Pathfinder, it would also be reasonable for the trier of fact to conclude that Gomez covertly disposed of the gun used in the shooting without alerting his friends. Indeed, it is entirely possible that Gomez owned more than one chrome gun and that he led police to the one that he left at home on the night of the shooting.

## III. Conclusion

For the reasons stated above, Gomez failed to show a fundamental miscarriage of justice sufficient to overcome the procedural bar to his ineffective assistance of counsel claim. Therefore, we cannot consider Gomez's ineffectiveness argument on its merits. The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*