**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-30**

WILLIE BROWN, JR.,

Petitioner - Appellant,

versus

MARVIN POLK, Warden, Central Prison, Raleigh,
North Carolina,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Malcolm J. Howard,
District Judge. (CA-98-774-5-H-HC)

Argued:  May 27, 2005                 Decided:  June 23, 2005

Before LUTTIG, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Traxler wrote the opinion,
in which Judge Luttig and Judge Michael joined.

**ARGUED:** James Donald Cowan, Jr., SMITH MOORE, L.L.P., Greensboro,
North Carolina, for Appellant.  Sandra Wallace-Smith, Assistant
Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh,
North Carolina, for Appellee.  **ON BRIEF:** Laura M. Loyek, SMITH
MOORE, L.L.P., Raleigh, North Carolina, for Appellant. Roy Cooper,
Attorney General, Barry McNeill, Special Deputy, Raleigh, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

TRAXLER, Circuit Judge:

Petitioner Willie Brown, Jr., appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C.A. § 2254 (West 1994 & Supp. 2005), which alleged (1) that his death sentence violates the Eighth and Fourteenth Amendments to the United States Constitution because the jury was instructed that it must unanimously find the existence of any mitigating circumstances; and (2) that his appellate counsel rendered constitutionally ineffective assistance by failing to argue this unanimity issue on direct appeal to the North Carolina Supreme Court. For the following reasons, we affirm.

I.

In November 1983, a North Carolina jury convicted Brown of the armed robbery and first-degree murder of Vallerie Ann Roberson Dixon. The facts leading to Brown's conviction are fully set forth by the North Carolina Supreme Court in State v. Brown, 337 S.E.2d 808 (N.C. 1985), and by this court in Brown v. Lee, 319 F.3d 162 (4th Cir. 2003). For purposes of this appeal, the following excerpt will suffice:

> At approximately 5:47 a.m. on the morning of March 6, 1983, a Zip Mart convenience store on Main Street in Williamston, North Carolina, where Ms. Dixon was supposed to be working as a clerk, was reported empty. A patrolling police officer had seen Ms. Dixon in the store less than thirty minutes prior to the report. Money from the cash register and a store safe was missing, as was Ms. Dixon's automobile. A search for Ms. Dixon was immediately begun.

3

At about 6:20 a.m., a police officer spotted Ms. Dixon's automobile traveling on a nearby road. The automobile was stopped by police officers, and Brown, who was driving alone in the vehicle, was immediately placed under arrest and advised of his rights. A .32 caliber six-shot revolver, a paper bag containing approximately $90 in cash and change, and a change purse containing Ms. Dixon's drivers license and social security card were found in the automobile. A pair of ski gloves and a toboggan cap with eye holes cut out of it were found on Brown's person. The exterior of the car was partly covered with fresh mud. According to the police officers, Brown admitted that he robbed the Zip Mart and fled in Ms. Dixon's car, but claimed that Ms. Dixon was unharmed when he left the store.

At approximately 4:00 p.m. that afternoon, Ms. Dixon's body was found on a muddy logging road in a rural area outside Williamston. Forensic pathology and firearm tests revealed that Ms. Dixon had been shot six times with the .32 caliber revolver that police had found in Dixon's car at the time of Brown's arrest.

Id. at 165. In November, 1983, Brown was tried and convicted of first degree murder and the capital sentencing phase of the trial began. At the conclusion of the sentencing phase, the jury found three aggravating circumstances.[1] The trial court submitted seven possible mitigating circumstances for the jury's consideration, but the jury found none.[2] The jury returned a recommendation that

---

[1]The jury found the following aggravating circumstances: (1) that Brown had previously been convicted of a felony involving the use of threat or violence to the person; (2) that the murder was committed by Brown while he was engaged in the commission of or flight after committing a robbery; and (3) that the murder was especially heinous, atrocious, or cruel.

[2]The mitigating circumstances submitted to the jury for consideration were (1) that Brown had no significant history of prior criminal activity, (2) that Brown was a person of limited intelligence and education, (3) that Brown was under the age of 21 at the time he committed any previous felonies for which he had

4

Brown be sentenced to death for the murder conviction. On appeal to the North Carolina Supreme Court, counsel raised seventeen claims of error, but did not assert that the trial judge erred in instructing the jury that mitigating circumstances must be found unanimously. The North Carolina Supreme Court affirmed Brown's conviction and death sentence, see Brown, 337 S.E.2d at 830, and the United States Supreme Court denied Brown's petition for writ of certiorari in 1986. See Brown v. North Carolina, 476 U.S. 1164 (1986).

On March 9, 1987, Brown filed a motion for appropriate relief ("MAR"), seeking state habeas relief. For the first time, Brown asserted that the trial court had erroneously instructed the jury that it must unanimously find any mitigating circumstances, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. On November 19, 1987, the MAR court concluded that, because Brown had been in a position to raise the unanimity issue before the North Carolina Supreme Court on direct appeal but had failed to do so, he was procedurally barred from raising it on state habeas.

---

been convicted, (4) that Brown had not been convicted of any criminal offense for 18 years, (5) that Brown surrendered at the time of his arrest without resistance to law enforcement officers, (6) that Brown confessed soon after his arrest to robbing the Zip Mart, and (7) any other circumstances which the jury deemed to have mitigating value.

5

Six months prior to Brown's November 1983 conviction, the North Carolina Supreme Court rejected a claim that it was error for the trial court to instruct the jury that it must unanimously find mitigating circumstances. See State v. Kirkley, 302 S.E.2d 144, 156-57 (N.C. 1983). However, on June 6, 1988 (five years after Kirkley was decided and two years after Brown's conviction became final), the United States Supreme Court reversed a death sentence imposed in Maryland because there was "a substantial probability that reasonable jurors . . . well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." Mills v. Maryland, 486 U.S. 367, 384 (1988). Two years later, the Supreme Court held that North Carolina's unanimity requirement likewise failed to pass constitutional muster. See McKoy v. North Carolina, 494 U.S. 433, 443 (1990) (holding that the Constitution requires that "each juror must be allowed to consider all mitigating evidence in deciding . . . whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstances, are sufficiently substantial to justify a sentence of death").

In the wake of these Supreme Court decisions, Brown made a number of attempts to re-raise the unanimity issue on state habeas and to obtain reconsideration of the state MAR court's November

6

1987 order finding the claim to be procedurally barred, but was unsuccessful. See Brown, 319 F.3d at 166-67. On June 16, 1997, the state court denied all remaining claims for state MAR relief, including Brown's claim that his counsel was ineffective for failing to raise the unanimity issue on direct appeal, and the North Carolina Supreme Court denied Brown's petitions for writ of certiorari and for reconsideration. See State v. Brown, 505 S.E.2d 879 (N.C. 1998); State v. Brown, 501 S.E.2d 920 (1998). The United States Supreme Court denied Brown's petition for writ of certiorari. See Brown v. North Carolina, 525 U.S. 888 (1998).

On December 24, 1998, Brown filed his petition for habeas relief in the district court under 28 U.S.C.A. § 2254, raising eleven constitutional challenges to his conviction and sentence, including claims that his jury was improperly instructed that it had to be unanimous in finding any mitigating circumstances, and that his counsel was constitutionally ineffective in failing to raise the unanimity claim on direct appeal to the North Carolina Supreme Court.

On February 25, 2002, the district court granted the State's motion for summary judgment, denied Brown's motion for summary judgment, and dismissed Brown's habeas petition. With regard to the unanimity claim, the district court concluded that it was precluded from reviewing the merits of the claim because the state court procedurally barred Brown from raising it on state habeas

7

under an adequate and independent state law ground. The district court also rejected Brown's claim that his appellate counsel was constitutionally ineffective for failing to raise the unanimity claim on direct appeal. Brown's subsequent motion to alter or amend the judgment was also denied.

In May 2002, Brown filed an application for a certificate of appealability, seeking, inter alia, to appeal the district court's conclusion that it was procedurally barred from considering the unanimity claim, including the finding that counsel's failure to raise the issue on direct appeal did not constitute cause to excuse the procedural default. The district court granted Brown's application for a certificate of appealability as to the unanimity claim. See 28 U.S.C.A. § 2253 (West Supp. 2005).

On February 14, 2003, we reversed the district court's holding that it was precluded from considering the merits of Brown's unanimity claim under the doctrine of procedural default because North Carolina "[had] not regularly and consistently applied its procedural default rule . . . to claims challenging unanimity instructions." Brown, 319 F.3d at 177. Because our precedent at the time was that the unanimity holdings in Mills and McKoy were exceptions to the general rule that "new rules" of constitutional procedure do not apply retroactively to cases on collateral review, see Williams v. Dixon, 961 F.2d 448, 453 (4th Cir. 1992), we remanded the unanimity claim to the district court for

8

consideration on the merits, <u>see</u> <u>Brown</u>, 319 F.3d at 168, 177. And, because remand for a determination on the merits was in order, we found it unnecessary to address Brown's claim that his appellate counsel was ineffective for failing to raise the unanimity issue on direct appeal to the state court. <u>See</u> <u>id.</u> at 175 n.4.

After our decision was issued remanding the case for a decision on the merits, the Supreme Court granted certiorari in the case of <u>Beard v. Banks</u> to address the question of whether <u>Mills v. Maryland</u> announced a "new rule" under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), not applicable retroactively to cases on federal habeas review. <u>See</u> <u>Beard v. Banks</u>, 539 U.S. 987 (2003). Because this directly impacted our decision in <u>Williams</u> and the propriety of the district court's examination of the merits of the unanimity claim on remand, the district court issued an order on January 7, 2004, holding Brown's case in abeyance pending a decision by the United States Supreme Court in <u>Beard</u>.

On June 24, 2004, the Supreme Court issued its decision in <u>Beard</u>, holding that <u>McKoy</u> announced a new rule of law that did not fall within either of the <u>Teague</u> exceptions to the general rule of nonretroactivity, effectively overruling our decision in <u>Williams</u>. <u>See</u> <u>Beard v. Banks</u>, 124 S. Ct. 2504, 2515 (2004). Accordingly, under the Supreme Court's directive in <u>Beard</u>, federal habeas courts are precluded from applying the unanimity rules of <u>Mills</u> and <u>McKoy</u>

9

retroactively to state death penalty cases that became final before the rule was announced.  See id.

On August 25, 2004, the district court issued an order granting the state's motion for summary judgment with respect to Brown's unanimity claim.  Because the United States Supreme Court had denied Brown's petition for a writ of certiorari on June 2, 1986, well before the Supreme Court issued its decisions in Mills or McKoy, the district court concluded that Brown was not entitled to a writ of habeas corpus.  The district court denied Brown's subsequent motion to alter or amend the judgment.[3]

In November 2004, Brown filed an application for a certificate of appealability with the district court, seeking to appeal the district court's finding that Teague and Beard prohibit application of the rule in Mills and McKoy to Brown's case, as well as the district court's prior ruling that Brown's appellate counsel was not ineffective for failing to raise the McKoy error in Brown's direct appeal to the state court.  The district court granted Brown's application for a certificate of appealability as to the unanimity claim, and we granted Brown's application for a

---

[3]Because the merits of the unanimity claim were never addressed by this court, and there is no dispute that the controlling legal authority regarding Teague's application changed dramatically after our remand, the "mandate rule" did not prevent the district court from denying the claim on the basis of Teague. See United States v. Bell, 5 F.3d 64, 66-67 (4th Cir. 1993).

certificate of appealability as to the ineffective assistance of counsel claim.

## II.

We begin with Brown's claim that his rights under the Eighth and Fourteenth Amendments were violated, and that he is entitled to a new sentencing hearing, because he was sentenced pursuant to the jury instruction requiring unanimity for the consideration of mitigating circumstances. The district court held that the claim was barred by Teague. We agree.

In Teague, the Supreme Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague, 489 U.S. at 310. "[T]he determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process." Beard, 124 S. Ct. at 2510. We must (1) "determine when the defendant's conviction became final," (2) "ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule," i.e., "decide whether the rule is actually 'new,'" and (3) if so, "consider whether [the new rule] falls within either of the two exceptions to nonretroactivity" set forth in Teague. Id. (internal quotation marks and citations omitted). The exceptions to nonretroactivity are limited; "the bar does not

11

apply to rules forbidding punishment of certain primary conduct or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense" or to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Id. at 2513 (internal quotation marks and alterations omitted).

In short, Teague's "nonretroactivity principle prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final," unless the rule falls within one of the two limited exceptions. Caspari v. Bohlen, 510 U.S. 383, 389 (1994). "[T]he nonretroactivity principle is not jurisdictional in the sense that federal courts must raise and decide the issue sua sponte," but "if the State does argue that the defendant seeks the benefit of a new rule of constitutional law, the court must apply Teague before considering the merits of the claim." Id. (internal quotation marks and alterations omitted).

In this case, the State preserved its argument that the rule in Mills and McKoy should be viewed as a new rule not applicable retroactively to Brown's conviction; they raised the precise issue in response to Brown's prior appeal. And, in Beard, the Supreme Court held that Mills did indeed announce a "new rule" regarding unanimity which does not fall within either of the two exceptions to Teague, effectively overruling our decision in Williams. See

12

Beard, 124 S. Ct. at 2515. There is also no dispute that Brown's conviction became final before the "new rule" of Mills and McKoy was announced -- the North Carolina Supreme Court affirmed Brown's conviction and sentence on December 10, 1985, and the United States Supreme Court denied Brown's petition for a writ of certiorari on June 6, 1986. See Caspari, 510 U.S. at 390 ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."). Indeed, Brown concedes that his conviction and sentence became final prior to the Supreme Court's decision in Mills.

Nevertheless, Brown claims that he should receive the benefit of the Mills/McKoy rule (even though his conviction became final before either case was decided) because the state court never adjudicated the merits of his unanimity claim. Brown did not raise the unanimity issue on direct appeal, and the state MAR court did not reach the merits of the claim because it concluded that the claim was procedurally barred. Where the state court has failed or refused to render an adjudication on the merits of a constitutional claim, Brown contends that the limitations in Teague and Beard simply do not apply and "there is no basis for denying criminal defendants the benefit of new constitutional protections" to upset

13

a final state court conviction. Brief of Appellant at 11. We disagree.

As an initial premise, we note that Brown has pointed to no authority for this purported "third" exception to the application of Teague. Brown has uncovered no cases in which a court has refused to apply Teague because the state court had not considered the merits of a claim that ultimately led to the creation of a "new rule" in an unrelated case, and the cases that have been referenced suggest that no such exception was contemplated. See Lambrix v. Singletary, 520 U.S. 518, 521, 539-40 (1997) (holding that petitioner's constitutional claim, which the state court had rejected without consideration of the merits on the ground that it was procedurally barred, was based upon a "new rule" barred by Teague); Burch v. Corcoran, 273 F.3d 577, 584 (4th Cir. 2001) (applying Teague to bar Apprendi claim that had been raised for the first time in the petitioner's effort to obtain federal habeas relief); Fisher v. Texas, 169 F.3d 295, 304 (5th Cir. 1999) (holding that Teague bar applied to federal habeas claim that was neither procedurally barred nor adjudicated on the merits by the state court); Daniel v. Cockrell, 283 F.3d 697, 702, 705 (5th Cir. 2002) (same). And, as pointed out by the district court, we indicated to the contrary in Green v. French, 143 F.3d 865, 874 (4th Cir. 1998), abrogated on other grounds by Williams v. Taylor, 529 U.S. 362, 409 (2000) ("[T]he anti-retroactivity principles of

14

*Teague* would appear applicable in contexts where the limitations of section 2254(d)(1) are not, such as where a *habeas* petitioner's constitutional claim is not properly raised in state court and therefore not adjudicated on the merits in State court, but where a court may nonetheless conclude that the failure to properly raise the claim in state court is not excused (or perhaps, excused but *Teague*-barred) because the claim relies upon a new rule of constitutional law not made retroactive on collateral review.") (internal quotation marks and citation omitted)).

Nor do we view the rationales of the "new rule" doctrine as supporting such an exception. Brown asserts that "[a] primary justification for *Teague*'s limitation on retroactive application of new constitutional rules is comity between state and federal courts," and that "[t]his justification is inapplicable in cases where the state court has not issued an adjudication on the merits." Brief of Appellant at 15-16. The "new rule" doctrine of *Teague*, however, respects the interests of comity to state court adjudications and the finality of criminal judgments. See *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (noting that *Teague* "was motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on 'the constitutional standards that prevailed at the time the original proceedings took place'") (quoting *Teague*, 486 U.S. at 306)); *Teague*, 489 U.S. at

15

306 ("'[T]he threat of habeas serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards. In order to perform this deterrence function, . . . the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.'") (quoting Desist v. United States, 394 U.S. 244, 262-63 (1969) (Harlan, J., dissenting)); id. at 308 (noting that "the scope of the writ" had never been defined "simply by reference to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error," but rather by recognition "that interests of comity and finality must also be considered" (internal quotation marks omitted)).

Under Brown's suggested exception to the application of the Teague doctrine, however, the "finality" of a state court conviction and sentence would not be respected unless the state court actually considered and rejected the very claim that the Supreme Court later found meritorious. Indeed, a state court judgment could never truly be "final," because it would always be subject to collateral attack on the basis of a claim not presented and rejected on the merits by the state court but which resulted in a "new rule" upon presentation to the Supreme Court. Such uncertainty contravenes the very basis for respecting the finality of a state court judgment. See Teague, 489 U.S. at 309 ("[T]he

16

principle of finality . . . is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect."); id. ("'No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.'" (quoting Mackey, 401 U.S. at 691 (Harlan, J., concurring in judgments in part and dissenting in part))).

Brown asserts that "the application of new constitutional protections cannot undermine the state's efforts to apply then-existing precedent, and no friction is generated by the application o[f] new constitutional rules on collateral review" if the state court has not "adjudicat[ed] . . . the merits of a defendant's constitutional claims." Brief of Appellant at 18. But, such an approach to finality would no less result in the "understandabl[e] frustrat[tion]" of state courts that have "faithfully appl[ied] existing constitutional law only to have a federal court discover, during a habeas proceeding, new constitutional commands" that Teague set out to eliminate except in the most narrow of exceptions. Teague, 489 U.S. at 310 (alteration and internal quotation marks omitted). It also renders the "new rule" doctrine dependent upon individualized determinations of the facts and procedural history of each case. If defense counsel raises the

constitutional claim before the state court and it is rejected, the defendant cannot obtain federal habeas relief based upon a contrary Supreme Court decision issued after the conviction became final. But if defense counsel _fails_ to raise the constitutional claim before the state court, or the state court otherwise has no occasion to consider the claim on the merits (or refuses to consider the claim on the merits due to a procedural bar), the defendant can obtain federal habeas relief based upon a later Supreme Court decision.

As noted in _Teague_, our "relevant frame of reference" in federal habeas review "is not the purpose of the new rule whose benefit the defendant seeks, but instead the purposes for which the writ of habeas corpus is made available." _Id._ at 306 (alteration and internal quotation marks omitted).

> Habeas corpus always has been a _collateral_ remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.

_Id._ (quoting _Mackey_, 401 U.S. at 682-83). We find nothing in the language of _Teague_ that would make the concerns for comity and finality dependent upon whether the state court had occasion to or otherwise adjudicated the constitutional issue on the merits, and

18

no indication that a third "exception" to the nonretroactivity principle was ever contemplated by the Court. On the contrary, the Court noted at the outset of <u>Teague</u> the lack of "a unifying theme" in prior cases and the need to "clarify how the question of retroactivity should be resolved for cases on collateral review." <u>Id.</u> at 300. Had such an exception for the applicability of <u>Teague</u> been in order, we think the Court would have made that equally clear.

We also reject Brown's contention that the language of 28 U.S.C.A. § 2254(d), as amended by the AEDPA, compels a holding that <u>Teague</u> only applies to cases in which the petitioner has received an adjudication on the merits of his constitutional claim. Specifically, Brown asserts that the application of <u>Teague</u> in his case "is contrary to the limitation on federal court review established by the federal habeas statute, 28 U.S.C. § 2254(d), which explicitly codifies the principle that habeas review should be restricted only in cases involving an adjudication on the merits." Brief of Appellant at 16. We disagree.

The amendments to the AEDPA modified the standard of review that courts apply to claims which are reviewable on federal habeas. Before the amendments were adopted, federal habeas courts reviewed such constitutional claims <u>de novo</u>. Under the amendments, federal habeas courts review such constitutional claims under the deferential provisions set forth therein, <u>i.e.</u>, we may only grant

habeas relief based upon a constitutional claim adjudicated on the merits by the state court if the state court adjudication is contrary to or an unreasonable application of clearly established Supreme Court precedent.

The language of § 2254(d), however, does not engraft upon <u>Teague</u>'s general rule of nonretroactivity a requirement that the state court must have adjudicated the merits of the constitutional claim that ultimately resulted in the "new rule." Contrary to Brown's contention, we view the more deferential standard of review on federal habeas which was implemented by the amendments to § 2254(d) as consistent with the traditional application of <u>Teague</u> to "new rule" cases. If a constitutional claim has been adjudicated on the merits by the state court, we may not grant federal habeas relief unless that adjudication is contrary to or an unreasonable application of "clearly established" Supreme Court precedent, <u>i.e.</u>, an "old rule" under <u>Teague</u> jurisprudence. If the state court adjudication <u>is</u> contrary to or an unreasonable application of "clearly established" Supreme Court precedent, then § 2254(d) is no bar to relief, but habeas relief is not required; rather, the federal court reviews the merits of the claim under the pre-AEDPA <u>de</u> <u>novo</u> standard, no longer constrained by the deference required under § 2254(d). <u>See</u> <u>Moody v. Polk</u>, No. 04-21, 2005 WL 1118275 (4th Cir. May 12, 2005). Under <u>Teague</u> jurisprudence, however, "new rules" may not be applied to upset a state court

20

conviction, regardless of whether there has been a state court adjudication on the merits of the claim, unless one of the two narrow Teague exceptions exists.  The constitutional claim is simply not "reviewable" on the merits by the federal habeas court in the first instance.

In this case, the North Carolina state courts "conduct[ed] their proceedings in a manner consistent with established constitutional standards," i.e., those "constitutional standards that prevailed at the time the original proceedings took place." Teague, 489 U.S. at 306 (internal quotation marks omitted). Indeed, just six months before Brown's trial, the North Carolina Supreme Court confronted the unanimity issue and ruled that the requirement was constitutional. See Kirkley, 302 S.E.2d at 156-57. Upsetting the state court's judgment in Brown's case, based upon a new Supreme Court rule that contradicted the settled law in North Carolina at the time Brown's conviction and sentence became final, would strike at the very heart of the concerns for finality and comity expressed in Teague and, we believe, would directly contravene the directives laid down in Teague and Beard. Accordingly, we affirm the judgment of the district court denying habeas relief based upon Brown's unanimity claim. Because "Mills announced a new rule of constitutional criminal procedure that falls within neither Teague exception," the "rule cannot be applied

21

retroactively" to Brown on federal habeas review.  <u>Beard</u>, 124 S. Ct. at 2515.

III.

Brown next contends that he is entitled to habeas relief because his appellate counsel rendered constitutionally ineffective assistance in failing to argue on direct appeal that the unanimity instruction violated his constitutional rights.  We disagree.

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and that such assistance be effective, <u>see</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  In order to establish an ineffective assistance of appellate counsel claim before the state court, Brown was required to demonstrate "that his counsel was objectively unreasonable in failing" to identify and argue the unanimity issue, and "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (citation omitted); <u>see</u> <u>Hudson v. Hunt</u>, 235 F.3d 892, 895-96 (4th Cir. 2000).  "Unless [Brown] makes both showings, it cannot be said that the . . . death sentence resulted from a breakdown in the adversary process that renders the result unreliable."  <u>Strickland</u>, 466 U.S. at 687.  The burden is a high one.

22

In applying th[e] [<u>Strickland</u>] test to claims of ineffective assistance of counsel on appeal . . ., reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983); <u>see also</u> <u>Smith v. South Carolina</u>, 882 F.2d 895, 899 (4th Cir. 1989). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (quoting <u>Jones</u>, 463 U.S. at 751); <u>see also</u> <u>Smith</u>, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although recognizing that "[n]otwithstanding <u>Barnes</u>, it is still possible to bring a <u>Strickland</u> claim based on counsel's failure to raise a particular claim" on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." <u>Robbins</u>, 120 S. Ct. at 765. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" <u>Id.</u> (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)).

<u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (en banc).

Because Brown's Sixth Amendment claim was adjudicated on the merits by the North Carolina state court, Brown's claims are subject to the deferential standards set forth in the amendments to 28 U.S.C.A. § 2254(d). We are precluded from granting habeas relief unless we conclude that the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

23

determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d); see Williams, 529 U.S. at 412.[4]

Under Strickland, Brown was required to demonstrate that it was objectively unreasonable for his counsel to fail to raise a unanimity claim on direct appeal in 1985 and that, but for his counsel's deficient performance, there is a reasonable probability that his appeal would have succeeded. Noting that "[a]t the time that the defendant's case was tried, the North Carolina Supreme Court had upheld the jury instruction that required the sentencing jury to be unanimous in the finding of a mitigating circumstance [in Kirkley] and that "the Supreme Court did not reverse that opinion until 1990," J.A. 1853, the state MAR court concluded that appellate counsel's "[f]ailure to anticipate a new rule of law d[id] not constitute ineffective assistance of counsel." J.A.

---

[4]Brown argues that we must evaluate the prejudice prong of Strickland de novo because the state MAR court, when evaluating the second prong of Strickland's test, i.e., the "prejudice" prong, required a showing that the result "would have been different," instead of only a "reasonable probability" that the result "would have been different." Brief of Appellant at 38-39 (internal quotation marks omitted); see Moody v. Polk, No. 04-21, 2005 WL 1118275 (4th Cir. May 12, 2005). Because we conclude that the state court's determination that appellate counsel's performance was not deficient is neither contrary to nor an unreasonable application of the first prong of Strickland, we do not reach the prejudice inquiry and express no opinion as to what standard of review would be appropriate to apply to the second prong of the Strickland inquiry.

1854. The state court also concluded that Brown had "failed to prove that the failure of counsel to raise any of the alleged errors enunciated in this claim was not within the range of competence demanded of attorneys in criminal cases or such that the defendant's appellate counsel was not functioning as counsel as guaranteed by the Sixth Amendment of the United States Constitution." J.A. 1854. The district court, on federal habeas review, agreed:

> [Brown's] evidence is simply not sufficient to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. It is of no consequence whether counsel's failure to raise the claim was an intentional tactical choice or an inadvertent omission, for [Brown] has failed to establish that the prevailing professional norm in 1985 required appellate counsel to challenge the unanimity requirement. The Sixth Amendment does not require counsel to recognize and raise every conceivable constitutional claim.

J.A. 2094 (internal quotation marks omitted). Accordingly, the district court concluded that the state MAR court's determination that counsel's performance was not constitutionally deficient was neither contrary to nor an unreasonable application of Strickland. We agree with the district court's determination that Brown is not entitled to habeas relief on this basis as well.

25

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>